COMMONWEALTH *vs.* ELIZABETH THEBERGE.

Essex.    October 5, 6, 1953. — November 9, 1953.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Homicide. Arson. Jury and Jurors. Practice, Criminal,* New trial;
    Conduct of juror; Exceptions: whether error harmful, failure to save
    exception; Guardian ad litem; Preliminary question; Assignment of
    error; Striking out evidence. *Pleading, Criminal,* Bill of particulars.
    *Error,* Whether error harmful. *Evidence,* Relevancy and material-
    ity, Matter of common knowledge, Competency, Exhibit. *Witness,*
    Expert witness, Competency, Child, Self incrimination. *Guardian,*
    Guardian ad litem.

Motions for directed verdicts of not guilty were rightly denied at the
    trial of indictments against a woman for manslaughter and arson
    where there was evidence that she occupied a tenement on the second
    floor of a tenement house, that early one morning after drinking in-
    toxicating liquor she told her son, ten years of age, to open a window
    and door on the third floor and to get an oil lamp and accompany her,
    that they went to an enclosure under the rear stairs on the first floor,
    that she poured oil from the lamp upon some old papers and old paint
    cans there, set the papers afire, and returned to bed with her son,
    and that during the ensuing fire in the building the dead bodies of two
    occupants, victims of asphyxia, were recovered. [522–523]
There was no error at the trial of an indictment in a refusal by the judge
    of a request that the prosecutor be required to read the filing date
    of specifications by the Commonwealth. [523]
No prejudicial error was shown at the trial of an indictment for arson in
    the admission of testimony by a companion of the defendant as to a
    conversation they had shortly before the fire in which nothing was
    said about any fire. [523]
At the trial of an indictment for arson in burning a tenement house in
    April, 1953, evidence as to fires at the house prior to December, 1952,
    was rightly excluded as remote. [523]
A member of the State police attached to the fire marshal's division who
    had investigated six hundred fires and was familiar with different
    kinds of burning fluids was properly permitted to testify as an expert
    at the trial of an indictment for arson that the odor from an oil lamp
    in evidence was the odor of range oil. [523–524]
A jury are entitled to consider a proper answer by an expert witness to
    a question relating to a matter of common knowledge. [524]
An oil lamp identified by evidence as having been employed by the de-
    fendant in setting a fire was properly admitted as an exhibit at the
    trial of an indictment for arson. [524]

A judge presiding at the trial of an indictment, in conducting a preliminary examination of the defendant's ten year old son before allowing him to testify as a witness for the Commonwealth, properly confined the scope of the examination to determining the ability of the son to testify and properly refused at that time to deal with the matter of protecting the son against self incrimination in his testimony by appointing a guardian ad litem for him or otherwise. [525–526]

There was no error at the trial of an indictment in a ruling made by the judge, after conducting a thorough preliminary examination of a boy almost eleven years of age, that the boy possessed sufficient ability to testify. [526]

On appeal following trial of an indictment under G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended, an assignment of error not based upon an exception has no standing. [527]

There was no error in a refusal by the judge at the trial of an indictment of a request, first presented by the defendant at the close of all the evidence, to strike out certain testimony not objected to by him when offered. [527]

At an examination by a judge of alleged irregularity on the part of a member of a jury which had returned verdicts of guilty upon certain indictments, witnesses other than the juror should have been sworn; the juror was bound to make true answers to the judge without being sworn again. [529]

It was error to deny a new trial to a defendant convicted upon certain indictments where during the trial discussions of material matters and of important witnesses took place between spectators at the trial and other witnesses in the immediate presence and hearing of one of the jurors while he was riding with them in automobiles on two forty-five minute trips and must have had a detrimental effect upon the defendant's case. [530]

INDICTMENTS, found and returned on May 15, 1953.

The cases were tried in the Superior Court before *Fairhurst,* J.

*George Karelitz, (Maurice S. Close & Jason Cohen* with him,) for the defendant.

*Albert P. Pettoruto,* Assistant District Attorney, (*Donald J. Cregg,* Assistant District Attorney, with him,) for the Commonwealth.

RONAN, J. The defendant was indicted, tried, and convicted upon two indictments, the first charging her with manslaughter in two counts, and the second accusing her of arson. Both indictments were tried together subject to G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended. The cases are here upon an appeal with a transcript of the

evidence, a summary of the record, a transcript of the proceedings before the judge in the investigation of a juror, and an assignment of errors.

The defendant with her four children, whose ages ranged from a year and one half to less than eleven years, occupied a tenement, comprising one half of the second floor of a six tenement house. She left these children in the care of the oldest child when she went from her home on the evening of April 3, 1953, accompanied by one Francis. After visiting various drinking resorts, she and Francis returned to her home shortly before midnight. They continued to drink intoxicating liquor which Francis had purchased. They engaged in an argument which awoke the downstairs tenant. Francis left at about three-thirty o'clock in the morning. The defendant requested her son Thomas to give her the keys to the cellar and, when he was unable to find them, she struck him, knocking his head against a pipe. She told him to go up to a tenement on the third floor which was vacant and open the rear window and the front door, which he did. A family named Morasse occupied the other tenement on the top or third floor. The Morasse dog began to bark. It does not appear that anything else was done on this floor. When her son returned from the third floor she asked him if he wanted to light a fire. He replied in the negative. She told him he was going to and to come with her. She told him to get an oil lamp. The lamp contained oil and had been used in the tenement when the supply of electricity failed. The son went with her to a shed or enclosure by or under the rear stairs on the first floor. She poured the oil upon some old papers and old paint cans which were there, after he refused to do so, and then set the papers afire. She took the son to bed with her and told him to stay there until the firemen broke down the door. The rear of the house was soon enveloped in flames. The son dressed and aroused the other children, and they and the defendant escaped from the second floor. Firemen arrived in a few minutes. Three persons were calling for help from a front window. One of them fell or

jumped to the street. The dead bodies of the other two were recovered by firemen, victims of asphyxia. We have narrated some of the salient facts which the jury could find. The ruling of the judge, which is challenged by the seventeenth assignment of error, in denying the motions for a directed verdict was right. *Commonwealth* v. *Asherowski*, 196 Mass. 342. *Commonwealth* v. *Cooper*, 264 Mass. 368, 373. *Commonwealth* v. *Alba*, 271 Mass. 333.

Various assignments of error may for convenience be disposed of before reaching the principal assignments. There was no error in the judge refusing to require the Commonwealth to read the filing date of specifications as set forth in the first assignment of error, *Commonwealth* v. *Belenski*, 276 Mass. 35, 40, nor in permitting Francis to testify that he and the defendant were discussing marriage in their conversation in the early morning prior to the fire, which is the basis for the second assignment. It is undisputed that both were engaged in conversation until he left. Nothing was said about any fire. The admission of such evidence did not constitute a reversible error as the defendant does not show she was prejudiced. The judge was right in excluding evidence as to the number of fires at this dwelling house since 1947. He permitted the defendant to show that there was a cellar fire in December, 1952, and a mattress fire in one of the vacant furnished tenements in February, 1953. Other previous fires, he deemed, were too remote. They were collateral to the issue whether the defendant set the fire for which she was accused. *Commonwealth* v. *Gauvin*, 143 Mass. 134. *Noyes* v. *Boston & Maine Railroad*, 213 Mass. 9, 11. *Robitaille* v. *Netoco Community Theatre of North Attleboro, Inc.* 305 Mass. 265, 268–269. *Brownhill* v. *Kivlin*, 317 Mass. 168, 171. The exclusion of this evidence which is presented by the third and fourth assignments of error was correct.

One Kelleher, a member of the State police attached to the fire marshal's division, had investigated six hundred fires and in connection therewith he was familiar with different kinds of burning fluids. He was properly per-

mitted to testify that the odor from the lamp, the contents of which the jury could find were used by the defendant in igniting the fire, was the odor of range oil. He could properly be found to be an expert, *Thornhill* v. *Carpenter-Morton Co.* 220 Mass. 593, 599; and even if he was not, the odor of the fluid used in an ordinary oil lamp would seem to be a matter of common knowledge. *Commonwealth* v. *Timothy*, 8 Gray, 480. *Haines* v. *Hanrahan*, 105 Mass. 480. *Commonwealth* v. *D'Amico*, 254 Mass. 512. If a question asked an expert calls for an answer which is a matter of common knowledge and it is properly answered, the jury are entitled to the answer. *Greene* v. *Boston Elevated Railway*, 207 Mass. 467. There is consequently nothing in the fourteenth and fifteenth assignments of error attacking this evidence of Kelleher. The thirteenth assignment is based upon a question in direct examination put to the son in reference to the lamp. The record describes the ground for this assignment as follows: "ASSISTANT DISTRICT ATTORNEY: And was that the same lamp that you used the night of the fire? THE WITNESS: Yes. ASSISTANT DISTRICT ATTORNEY: I would like to offer this at this time, if your Honor pleases. It has already been identified. I would like to offer this. COUNSEL FOR THE DEFENDANT: Your Honor please, I am objecting to it. THE JUDGE: Admitted. (Lamp marked 'Ex. 2'). COUNSEL FOR THE DEFENDANT: Will your Honor note my exception?" It is plain that no objection was made to the question and answer of the witness and that the only exception saved was to making the lamp an exhibit. The lamp was properly introduced in evidence. Instruments employed in the commission of a crime charged against a defendant are competent evidence. *Commonwealth* v. *Giacomazza*, 311 Mass. 456, 470. *Commonwealth* v. *O'Toole*, 326 Mass. 35, 39.

Assignments of error numbered 5, 6, 7, 8, 9, 10, 11, 12, 16, and 18 all relate to different objections of the defendant at the preliminary examination of the son to permitting him to appear as a witness and to testify in behalf of the Commonwealth. Before the witness was allowed to testify the

judge in the absence of the jury conducted a preliminary examination in which many questions were put to and answers made by the son. During this hearing counsel for the defendant orally requested the judge to allow the objections of the defendant, as the mother and legal custodian, and to prohibit her son from testifying or, if those requests were refused, to appoint a guardian ad litem for the son, and to order an examination to be made by a psychiatrist and to apprise the son of his rights to refuse to give evidence incriminating himself. At the close of the hearing, the judge stated that the son was capable of testifying and that he would permit him to do so, but that other than finding that the son had sufficient ability to testify, he was not going into any of the other matters suggested by the defendant's counsel. Counsel then urged that, if the defendant was not the proper party to raise the question, the son should not testify on the ground that he might incriminate himself, and that a guardian ad litem should be appointed. The judge stated that he would adhere to his former ruling, that is, not to pass then upon the various matters suggested by the defendant other than the capacity of the son to testify, and that he would not make any order for the appointment of a guardian ad litem as suggested by the defendant. The defendant saved an exception. The only other exception saved by the defendant at this hearing was to the ruling that the son was of sufficient ability to testify and that he could testify. The first of these two exceptions, which is the basis of the seventh assignment of error, would seem to embrace only the refusal of the judge to appoint a guardian ad litem. He had heard the son testify at considerable length and had formed the opinion that he was of sufficient intelligence and mental ability to testify. The record discloses no reason for the appointment of a guardian ad litem, as set forth in this assignment of error. See, for instance, *Welch* v. *Fox*, 205 Mass. 113; *Sullivan* v. *Judges of the Superior Court*, 271 Mass. 435, 437.

So far as this first exception may be construed as relating

to the refusal of the judge to pass upon any of the other various arguments advanced by the defendant at this hearing, it should be pointed out that the son had not then testified as a witness. The judge at that posture of the case was not required to pass upon any of these objections. The judge at the beginning of the preliminary examination correctly defined its scope in stating that he would only determine the ability of the son to testify. That was the only question then calling for an immediate decision. The time for deciding what standing the defendant had to object to any question put to the son because an answer might tend to incriminate him, what instructions should be given to the son in reference to the privilege of refusing to testify to such matter, and the action that should be taken by the judge to protect the son against self-incriminating evidence, did not arise until the son was asked a question the answer to which might incriminate him. *Ex parte Irvine*, 74 Fed. 954. *Marcello v. United States*, 196 Fed. (2d) 437. *In re Schnitzer*, 295 Mich. 736. *Schiffman v. Bleakley*, 46 N. Y. Sup. (2d) 353. *Commonwealth v. Tracey*, 137 Pa. Super. Ct. 221. There was no error in the failure of the judge to pass upon the request of the defendant at the preliminary examination that the son should not testify, as alleged in the sixth assignment of error, because it does not appear to be based on any exception saved by the defendant. In any event, the judge was within his rights to refuse to rule upon that question at the time it was presented.

The second and only other exception taken at this hearing, which is now raised by the tenth assignment of error, was to the ruling that the son, who was then within four days of his eleventh birthday, possessed sufficient ability to testify. In this there was no error. *Commonwealth v. Robinson*, 165 Mass. 426. *Commonwealth v. Reagan*, 175 Mass. 335. *Commonwealth v. Teregno*, 234 Mass. 56. *Commonwealth v. Tatisos*, 238 Mass. 322.

The son testified in great detail as to what he and the defendant did in setting the fire. Not a single objection

was made to any of his testimony. Any questions as to the competency of any of the son's testimony purported to be raised by assignments of error numbered 5, 8, and 9 are not before us. An assignment of error has no standing unless based upon an exception. *Commonwealth* v. *MacGregor*, 319 Mass. 462, 463. *Commonwealth* v. *Taylor*, 319 Mass. 631, 633. The defendant in these instances and in others has attempted to base an assignment upon one of the grounds of her argument before the judge at the preliminary hearing respecting which no specific ruling was made and no exception was taken.

There was no error as set forth in the eleventh and sixteenth assignments of error based on the refusal of the judge to order an examination of the son by a psychiatrist. He had already formed the opinion that the son possessed sufficient ability to testify.

The twelfth assignment of error is not based upon an exception and has no standing.

No objection was taken to the testimony of the son while he was a witness, nor before the close of all the evidence when counsel in arguing his motions for a directed verdict stated that one of the grounds of his motions was the testimony of the son which he requested the judge to strike out. The refusal to do so is the basis of the eighteenth assignment of error. There was no error. The rule generally prevailing in this Commonwealth is that objections to matters of evidence must be seasonably made and exceptions taken when the evidence is offered, *Solomon* v. *Dabrowski*, 295 Mass. 358, 360, *Commonwealth* v. *Doyle*, 323 Mass. 633, 634–635; and a party cannot of right insist upon saving an exception to evidence by thereafter seeking to have the evidence struck out or to avoid its effect by presenting the point in a motion for a new trial. *Commonwealth* v. *Gricus*, 317 Mass. 403, 405. *Commonwealth* v. *White*, 323 Mass. 323, 325. *Arrigo* v. *Lindquist*, 324 Mass. 278, 281.

Assignments of error numbered 19, 20, 21, and 22 challenge the denial of the motion to grant a new trial because

of the alleged misconduct of a juror, and the failure to commence a new hearing on the motion in which the witnesses should be sworn and the defendant's counsel be given the right to cross-examine the witnesses.

A few days after the verdict was returned, counsel for the defendant directed the judge's attention to alleged irregularity upon the part of one or more of the jurors. The defendant later filed a motion setting up these matters. The judge immediately began an examination in the lobby in the presence of counsel for the Commonwealth and the defendant. It appeared that one juror had sought and secured a ride to his home in Lawrence on two days in a different automobile on each occasion and with a different group of members of the fire department of that city, some of whom had appeared as witnesses for the Commonwealth. There was evidence that the firemen knew he was a juror. He asked them not to discuss the case. There was evidence that the firemen during at least one of the trips alluded to an emotional outbreak of one Dublin, a witness, who had charge of the tenement house where the defendant lived, when he mistakenly thought from the nature of the questions put to him that he was being accused of setting the fire. There was also evidence that the son, who by that time had finished his testimony, was mentioned on one of these trips but no witness had any recollection of what, if anything, was said concerning him. One of the firemen stated that Francis testified that he left at two o'clock and the people downstairs said he left at three-thirty in the morning.

The juror at first denied that he had ridden with any witnesses. He later testified that he did but that he did not remember anything being said about the case because he was not paying any attention to what the firemen were saying. The witnesses were not sworn before they testified at this hearing. The testimony was taken down by an official stenographer and the judge ordered the transcript to be made a part of the record. The judge found that the juror "was entirely innocent of wrongdoing and was in no

way influenced because of the incident." The judge in open court stated that he denied the motion for a new trial subject to the exception of the defendant. The defendant's counsel then made an oral request that the witnesses be recalled and sworn and that they give their evidence anew, subject to the right of cross-examination. This request was denied.

The judge should have had the witnesses sworn other than the juror. The juror was bound to make true answers to the judge and it was not necessary that he should be again sworn before he testified in the preliminary examination. *Hix* v. *Drury*, 5 Pick. 296.

The judge saw and heard the witnesses and he was familiar with all the details of the case which had been tried before him. Much must be left to his sound discretion in deciding whether some particular irregularity upon the part of a juror has so affected the trial that the verdict should not be allowed to stand and a new trial should be granted in the interests of justice. See *Commonwealth* v. *White*, 147 Mass. 76, *S. C.* 148 Mass. 429; *Commonwealth* v. *Capland*, 254 Mass. 556; *Commonwealth* v. *Friedman*, 256 Mass. 214; *Claffey* v. *Fenelon*, 263 Mass. 427.

In the instant case, however, the juror during the forty-five minutes that the trips took was subjected to a discussion of the case which he was hearing. It could hardly be contended that, situated as he was, he could not have heard the discussion about the witnesses. Dublin was an important witness in setting forth the unkempt condition of the property, the storage of old and open paint cans for years at the place where the fire started, and the ready accessibility of the property to anyone who cared to enter. His testimony tended to aid the defendant in her effort to show that the fire might have been caused by spontaneous. combustion, by an intruder, or by someone other than herself. The firemen were evidently amused by his manner as a witness. The natural tendency of their remarks was to detract from the weight that might otherwise be given to his

testimony by the juror. The contradiction which the firemen pointed out between the testimony of Francis and the testimony of Mrs. Blackburn, the downstairs tenant, who said she heard Francis leave at about three-thirty in the morning, was a material issue in the trial. If Francis was disbelieved, it tended not only to contradict his testimony that he had left at two o'clock but to corroborate the testimony of the son that Francis was at his home when the defendant struck him knocking his head against a pipe, which could have been the sound that Mrs. Blackburn heard. The important witness for the Commonwealth was the defendant's son. He was brought into the discussion between the firemen while the juror was a passenger. There was no evidence of what was said about him. The situation was accurately described by one of the firemen, who did not recall what was said, as "It is a case, Judge, where five men get together, they forget this lone man [the juror] . . . this thing [the trial] was fresh in our minds and it is only natural that we probably did forget ourselves at times . . . ."

The defendant was entitled to a fair and impartial trial. The discussion by those who had been witnesses with those who were spectators at the trial on matters vital and essential to the material issues in the immediate presence of a juror was inexcusable and reprehensible. The narration of these events carries their own condemnation. Nothing that the Commonwealth can say can blur or lessen their obvious detrimental effects to the defendant's case. It was said by Holmes, J., in *Hilton* v. *McDonald*, 173 Mass. 124, 125, where the foreman of the jury at the close of a court session was seen to get into the carriage of one of the defendant's witnesses and drive away, that "Such occurrences as that of which the plaintiff complains certainly are not to be encouraged, and no doubt would need very little more to induce a presiding justice to set aside a verdict." Here there was much more. It was error to deny a new trial.

As there must be a new trial it is unnecessary to con-

sider the denial of another motion for a new trial filed before the motion dealing with the juror which was based on grounds already discussed.

*Judgments reversed.*