COMMONWEALTH *vs.* WALTER J. LOVETT, JR.

Worcester. October 3, 1977. — February 16, 1978.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Constitutional Law*, Double jeopardy. *Practice, Criminal*, Double jeopardy, Directed verdict. *Jury and Jurors. Pleading, Criminal*, Complaint.

A defendant convicted in the Superior Court on an indictment for breaking and entering a dwelling house in the nighttime with the intent to commit larceny, and sentenced to a ten to twenty year term, was not put in jeopardy by a previous trial and conviction for the same offense erroneously brought in a District Court, which sentenced him to a term of two and one-half years, inasmuch as the complaint charged the defendant with an act prohibited by G. L. c. 266, § 15, an offense over which the District Court lacked jurisdiction under the jurisdictional prerequisites of c. 218, § 26 [396-398]; there was no evidence that the District Court judge was acting under c. 266, § 18, which provides for a maximum sentence of "not more than two years" [399]; and the fact the complaint stated that the defendant's acts were "in vio[lation] of c. 266, § 16," an offense included in the District Court's jurisdiction, was not determinative of the offense alleged in the complaint [399-400].

Error on the part of the judge during a criminal trial in denying the defendant's motion to remove a juror from the panel for bias was not shown where it appeared merely that the juror had remarked to a government witness as she passed him "You've got good composure," and the judge later in a lobby conference inquired about the incident from the witness [400-402]; and there was no error in the failure of the judge to conduct a hearing at which the juror could have been questioned [402-403].

At a trial for breaking and entering a dwelling house in the nighttime, a motion for a directed verdict limited to "so much of the indictment as alleges night time break" did not raise the issue before the judge of the sufficiency of the evidence to warrant a finding that it was the defendant who broke and entered, and such issue was not before this court on appeal. [403]

INDICTMENT found and returned in the Superior Court on September 30, 1975.

The case was tried before *Beaudreau,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*John C. McBride* for the defendant.

*Daniel F. Toomey,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. On June 17, 1975, a criminal complaint was lodged against the defendant in the Second District Court of Eastern Worcester charging the offense of breaking and entering a dwelling house of one Dr. Joseph Humphries in the nighttime with intent to commit the felony of larceny of goods valued at more than $100.[1] The complaint erroneously noted that this conduct constituted a violation of G. L. c. 266, § 16.[2]

On July 9, 1975, the defendant was convicted on the complaint and sentenced to a term of two and one-half years in a house of correction. Pursuant to G. L. c. 278, § 18, as amended through St. 1974, c. 167, he appealed for a trial de novo and was released on personal recognizance.

---

[1] A single justice of the Appeals Court on January 6, 1977, denied the defendant's motion to expand the record to include the documents relevant to the proceedings in the District Court, but permitted the defendant to append those documents to his brief for use in argument. The appropriate procedure would have been for the defendant to offer evidence of the District Court complaint in support of his motion to dismiss in the Superior Court, see *Commonwealth* v. *Core,* 370 Mass. 369, 371 (1976). The Commonwealth objects to our consideration of these documents, but, since our review of them does not avail the defendant, we need not reach the question of the propriety of the Appeals Court Justice's ruling.

[2] General Laws c. 266, § 16, as appearing in St. 1974, c. 462, § 2, provides: "Whoever, in the night time, breaks and enters a building, ship or vessel, with intent to commit a felony, or who attempts to or does break, burn, blow up or otherwise injure or destroy a safe, vault, or other depository of money, bonds or other valuables in any building or place, with intent to commit a larceny or felony, whether he succeeds or fails in the perpetration of such larceny or felony, shall be punished by imprisonment in the state prison for not more than twenty years or in a jail or house of correction for not more than two and one half years."

General Laws c. 266, § 16, describes an offense specifically included in the jurisdiction of the District Court. See G. L. c. 218, § 26.

On September 30, a grand jury indicted the defendant for the same offense as that charged in the complaint, the nighttime breaking and entering of the dwelling house of Dr. Humphries with intent to commit the larceny of goods worth more than $100. After a four-day trial in the Superior Court in Worcester County, a jury found the defendant guilty. The judge sentenced the defendant to serve a term of from ten to twenty years in the Massachusetts Correctional Institution at Walpole. On motion by the Commonwealth, the judge then dismissed the complaint on which the defendant had been convicted in the District Court.

The defendant appealed his conviction pursuant to G. L. c. 278, §§ 33A-33G. Execution of his sentence was stayed by the Appeals Court pending this appeal. On April 4, 1977, we ordered that the matter be transferred to this court. We affirm the conviction.

The defendant raises three issues on appeal: (1) Whether the defendant was placed twice in jeopardy when he was tried on an indictment alleging the offense of which he had been earlier convicted in a District Court. (2) Whether the trial judge erred in refusing to remove a juror for bias. (3) Whether the Commonwealth presented sufficient evidence to warrant submission of the issue of a nighttime breaking and entry to a jury.

We find no error. The evidence presented at the trial will be discussed as relevant to our consideration of the issues.

1. *Double jeopardy.* The defendant argues that the judge erred in denying the defendant's motion to dismiss. He contends that his indictment and trial in the Superior Court on the same factual circumstances as those which formed the basis of a previous complaint in the District Court subjected him to double jeopardy. The Commonwealth concedes that the defendant was twice tried and convicted for the same offense, but denies that this procedure constituted double jeopardy.

Double jeopardy limitations on reprosecution for the same offense reflect the "deeply ingrained" principle of our jurisprudence that repeated attempts by the State to convict

an individual for an alleged offense improperly subject him to "embarrassment, expense and ordeal and compel him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green* v. *United States,* 355 U.S. 184, 187-188 (1957). The double jeopardy prohibition clearly applies to retrial after conviction as well as after acquittal. See *Waller* v. *Florida,* 397 U.S. 387, rehearing denied, 398 U.S. 914 (1970); *Commonwealth* v. *McCan,* 277 Mass. 199, 201 (1931). Otherwise, a defendant would be helpless against a prosecutor who repeatedly prosecutes a defendant until a judge finally imposes a sentence satisfactory to the prosecutor. It is equally clear, however, that double jeopardy principles do not always prohibit second trials. *Thames* v. *Commonwealth,* 365 Mass. 477, 479 (1974).

It is fundamental that a defendant who claims to have been twice put in jeopardy by a trial must show that he or she had been placed in jeopardy at an earlier trial for the same offense. See *Serfass* v. *United States,* 420 U.S. 377 (1975); *United States* v. *Sanabria,* 548 F.2d 1, 6 (1st Cir. 1976), cert. granted, 433 U.S. 907 (1977). This rationale underlies the rule that jeopardy does not attach if the earlier proceedings were conducted by a court without jurisdiction over the offense. As Chief Justice Shaw explained in *Commonwealth* v. *Roby,* 12 Pick. 496, 502 (1832): "[W]here the court before which the former trial took place had no jurisdiction of the offence, the party cannot be deemed in law to have been put in jeopardy, because no valid and binding judgment could have been rendered by such court." See also *Diaz* v. *United States,* 223 U.S. 442, 449 (1912); *United States* v. *Ball,* 163 U.S. 662, 669 (1896); *Lemieux* v. *Robbins,* 414 F.2d 353, 354 (1st Cir. 1969), cert. denied, 397 U.S. 1017 (1970). But see *Culberson* v. *Wainwright,* 453 F.2d 1219, 1220 (5th Cir.), cert. denied, 407 U.S. 914 (1972); *Robinson* v. *Neil,* 366 F. Supp. 924, 928-929 (E.D. Tenn. 1973).

Thus, we have held that a failure of jurisdiction due to a defendant's age nullifies the proceedings so that a subse-

quent trial is not barred by double jeopardy principles. *Commonwealth* v. *Chase*, 348 Mass. 100, 105 (1964). Similarly, where a defendant has been convicted or acquitted of a minor statutory offense in an inferior court, he may be prosecuted for a higher crime of which the inferior court lacks jurisdiction. *Commonwealth* v. *Mahoney*, 331 Mass. 510, 514 (1954). *Commonwealth* v. *Jones*, 288 Mass. 150, 152 (1934). *Commonwealth* v. *McCan*, *supra* at 204-206. Cf. *Commonwealth* v. *Clemmons*, 370 Mass. 288, 294-295 (1976).

We conclude that the District Court had no jurisdiction over the instant offense and that, consequently, double jeopardy principles do not bar the Superior Court proceedings on the indictment charging the defendant with the commission of the same offense.[3] The District Court complaint accused the defendant of breaking and entering a dwelling house in the nighttime with the intent to commit larceny. That act is prohibited by G. L. c. 266, § 15, an offense over which the District Court lacks jurisdiction.[4] The judge properly rejected the argument that the District Court had jurisdiction and denied the defendant's motion to dismiss. It is true that a defendant may be convicted of the lesser offense of breaking and entering in the daytime even though the indictment did not allege that the act was done during the day. *Commonwealth* v. *Sitko*, 372 Mass. 305, 307-308 (1977). *Commonwealth* v. *Reynolds*, 122 Mass. 454, 457 (1877). Nonetheless, in those cases the court had

[3] Thus, the defendant's reliance on *Waller* v. *Florida*, 398 U.S. 387 (1970), is misplaced. Unlike the case here, the Municipal Court in *Waller* had jurisdiction over the offense there charged. The Supreme Court held that a State court could not convict a defendant for the same acts which were the basis of conviction "for the identical offense" tried in the inferior court. *Id.* at 395.

[4] The District Courts of the Commonwealth, pursuant to G. L. c. 218, § 26, have jurisdiction only over offenses for which the maximum authorized penalty is not more than five years' imprisonment and over crimes whose penalties may exceed five years' imprisonment but are specifically included within the District Court's jurisdiction. General Laws c. 266, § 15, satisfies neither of these jurisdictional prerequisites.

jurisdiction over the offense whether committed during the day or night.[5] There is no evidence here that the District Court judge was acting under G. L. c. 266, § 18. We note that § 18 provides a maximum sentence of imprisonment that may be imposed in the District Court of "not more than two years," whereas the District Court judge imposed a sentence of two and one-half years in the house of correction. Cf. G. L. c. 266, § 16. The fact that the District Court judge imposed the punishment provided in § 16 rather than § 18 indicates that he was not acting in accordance with the defendant's theory.

Another ground on which a double jeopardy claim might rest is that, arguably, the District Court possessed jurisdiction because the complaint referred to the defendant as having violated G. L. c. 266, § 16. Chapter 266, § 16, proscribes, inter alia, the nighttime breaking and entering of a building, ship or vessel with intent to commit a felony. It is an offense specifically included within the jurisdiction of the District Court. See G. L. c. 218, § 26. The fact that the complaint contained the phrase "in vio[lation] of G. L. c. 266, § 16" is not determinative, however, as to the offense alleged thereby. The text of the allegation determines the nature of the complaint. *Commonwealth* v. *McClaine,* 367 Mass. 559 (1975). Here the language in the body of the complaint alleges that the defendant committed unarmed burglary of a dwelling house in the nighttime with intent to commit a felony therein, an offense not within the scope of the District Court's powers. G. L. c. 266, § 15. Cf. G. L. c. 277, § 79.

---

[5]Chapter 266, § 18, provides: "Whoever, in the night time, enters a dwelling house without breaking, or breaks and enters in the day time a building, ship or vessel, with intent to commit a felony, no person lawfully therein being put in fear, shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than five hundred dollars and imprisonment in jail for not more than two years."

Under this section, this court has read the daytime breaking and entering of a "building" to include the daytime breaking and entering of a "dwelling house." See, e.g., *Commonwealth* v. *Reynolds,* 122 Mass. 454 (1877); *Commonwealth* v. *Swahn,* 5 Mass. App. Ct. 642, 646-648 (1977).

Finally, we do not agree with the defendant's contention that his case falls squarely within the prohibition described in *Blackledge* v. *Perry,* 417 U.S. 21 (1974). The Supreme Court in *Blackledge* specifically eschewed reliance on the double jeopardy clause. *Id.* at 31. In *Blackledge,* a defendant who had appealed from his misdemeanor conviction in a North Carolina District Court was subsequently indicted for a felony offense involving the same transaction. The Supreme Court held that the potential for the prosecution's vindictiveness in such a situation denied the defendant due process of law. *Id.* at 27-28. By contrast, the prosecution here did not increase the severity of the charge in retaliatory response to the defendant's exercise of his right to appeal. Instead, the government obtained an indictment for the same offense as that charged in the complaint which was erroneously brought in the District Court. The mere fact that a greater sentence was imposed in the Superior Court than in the District Court is not sufficient to involve the principle of *Blackledge.* See *Colten* v. *Kentucky,* 407 U.S. 104 (1972). Cf. *North Carolina* v. *Pearce,* 395 U.S. 711 (1969); *Martinez* v. *Estelle,* 527 F.2d 1330, 1332 (5th Cir.), cert. denied, 429 U.S. 924 (1976). We find no error in the judge's denial of the defendant's motion to dismiss.[6]

2. *Juror bias.* The defendant next argues that the trial judge erred in denying the defendant's motion to remove a juror from the panel on the basis that the juror was biased. After a luncheon recess, counsel for the defendant notified the judge in a lobby conference of an incident involving Officer Waite, a prior government witness, and a woman who counsel asserted was a juror. After being summoned by the judge to the lobby conference, Officer Waite reported that

---

[6] The Commonwealth also argues that no double jeopardy attached since the defendant's claim of appeal for trial de novo operated to nullify the former trial. We find it unnecessary to reach that issue. The defendant's claim that an appeal from a conviction on a complaint ousts the Superior Court from any jurisdiction over the proceeding except the complaint itself also need not be reached.

"some woman" had passed him as he discussed a personal matter with Officer Shaw, also a witness for the prosecution. The woman remarked to him, "You've got good composure." Officer Waite was unable to describe or identify the woman. He was not even certain that she was a juror. The defense counsel requested that the woman be removed from the jury, but did not move for a mistrial. Nor did he request any examination of the jurors to determine whether a juror was involved.

In *Remmer* v. *United States,* 347 U.S. 227 (1954), amplified in 350 U.S. 377 (1956), the Supreme Court stated that in a criminal proceeding, "any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial. . . . [T]he burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." 347 U.S. at 229. See also *Mattox* v. *United States,* 146 U.S. 140, 148-150 (1892). The Supreme Court does not state whether due process requires the application of this standard to State criminal proceedings, nor have we reached that question. We apply these standards here because we believe that improper private communications between jurors and witnesses are fundamentally inconsistent with our concepts of due process and fair trial. *Commonwealth* v. *Theberge,* 330 Mass. 520 (1953). Thus, we must determine whether the government sustained its burden of proving that the communication here did not prejudice the defendant.

We note at the outset that it cannot be said with certainty that the communicant was a juror. For purposes of this analysis however, we shall assume that she was a member of the jury. The rule in *Remmer* applied only to communications about the matters pending before the court. The prevailing view is that mere casual conversation, unrelated to the issues of the case, held between a witness and a juror is not so improper as to constitute reversible error. E.g., *State* v. *Johnson,* 97 Ariz. 27, 30 (1964); *People* v. *Aguirre,* 158

Cal. App. 2d 304, 309-310 (1958); *State* v. *Duguay,* 158 Me. 61, 67 (1962); *State* v. *Brown,* 84 S.D. 201, 206 (1969); Annot., 9 A.L.R.3d 1275 (1966). Compare *Commonwealth* v. *French,* 357 Mass. 356, 401 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts,* 408 U.S. 936 (1972) (accidental contact between a juror and a witness in a court house stairwell during a recess was of no consequence), with *Commonwealth* v. *Theberge, supra* at 530 (discussion on "matters vital and essential to the material issues" in the presence of a juror requires reversal). In this case, the woman's remark in no way touched on any issues in the defendant's case. Nor did she overhear a conversation about such issues. Her comment appears innocuous.

The defendant contends, however, that the supposed juror's comment demonstrated that her allegiances were squarely on the side of the Commonwealth. We cannot agree. Although the conduct of the supposed juror here is regrettable, the nature of her comment does not indicate that she could not give the defendant a fair trial. Cf. *Burns* v. *State,* 84 Conn. 518, 519 (1911) (juror's remark to witness, "I want to congratulate you on your good appearance," did not indicate bias). The judge could have determined properly that the comment was entirely neutral.

The defendant argues that at least the judge should have conducted a hearing at which the offending juror could have been questioned as to possible prejudice. We note that the defense counsel did not request a voir dire of the jury or other investigatory action. Especially in light of the uncertainty that the communicant was even a juror, the judge's inquiry of Officer Waite was sufficient to determine the nature of the incident and conclude that no prejudice occurred. Under these circumstances, the judge may have reasonably believed that interrogation of the jury would be unnecessary and perhaps counterproductive.[7] See *Common-*

---

[7] There may be situations, however, where a claim of improper communication between a juror and third persons would require examination of the juror. See *Commonwealth* v. *Theberge,* 330 Mass. 520, 527-530 (1953).

*wealth* v. *Curry*, 368 Mass. 195, 201-202 (1975); *United States* v. *Williams*, 545 F.2d 47 (8th Cir. 1976) (per curiam). Accordingly, we find the judge did not err in his handling of the juror bias problem.

3. *Directed verdict.* The defendant assigns as error the denial of the defendant's motion for a directed verdict. He argues here that the Commonwealth failed to present sufficient evidence to warrant a finding that it was the defendant who broke and entered the premises.

The motion for a directed verdict presented to the judge did not raise this issue, however, as it was limited to "so much of the indictment as alleges night time break." The argument made at trial was limited to this issue. The Commonwealth argues that the defendant cannot raise for the first time at the appellate level an argument not presented to the trial judge. See *Commonwealth* v. *Johnson*, 371 Mass. 862, 867 (1977); *Commonwealth* v. *Flynn*, 362 Mass. 455, 472 (1972); *Commonwealth* v. *Gray*, 357 Mass. 771, 772 (1970). We agree. See *Commonwealth* v. *Ambers*, 370 Mass. 835, 838 (1976).

Additionally, the defendant fails to argue before this court the contention made at trial that there was insufficient evidence to warrant a finding of nighttime breaking and entering. Thus, this assignment of error brings nothing before us. S.J.C. Rule 1:13, as amended, 366 Mass. 853 (1975). *Commonwealth* v. *Pisa*, 372 Mass. 590, 591 (1977). In these circumstances, we need not recount the evidence which would warrant the jury verdict.

We have, however, reviewed the entire record to ascertain whether either argument has any merit so as to avoid any "substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). We conclude there is no merit to the defendant's arguments and that there is no such substantial risk in this case. *Commonwealth* v. *Leavy*, 369 Mass. 963 (1976).

*Judgment affirmed.*