COMMONWEALTH *vs.* CIRO NAZZARO (and three companion cases).[1] February 14, 1979. The defendants Ciro Nazzaro (Ciro) and Alexander Nazzaro (Alexander) were convicted on separate indictments returned on August 18, 1977, charging rape (G. L. c. 265, § 22) and on separate indictments returned the same day charging Ciro with assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A) and charging Alexander with assault by means of a dangerous weapon (G. L. c. 265, § 15B). They appeal (G. L. c. 278, §§ 33A-33G) and argue two assignments of error.

1. *Double jeopardy.* In December, 1976, separate complaints were issued against Ciro and Alexander in the District Court of Chelsea, charging each of them with rape and assault and battery by means of a dangerous weapon. In February, 1977, the District Court judge "reduced" (as noted on the complaints) all four complaints to assault and battery and convicted each defendant of the lesser charge. Only Ciro appealed to the Superior Court. Subsequently, at the suggestion of a judge of the Superior Court before whom Ciro's appeal came, the prosecuting attorney sought the indictments against both Ciro and Alexander which resulted in the convictions in this case.

---

[1] One of the companion cases is against Ciro Nazzaro and two are against Alexander Nazzaro, his brother.

The defendants' contention that the action of the District Court of Chelsea bars the convictions on the indictments in this case is foreclosed by *Commonwealth* v. *Mahoney*, 331 Mass. 510 (1954). In the *Mahoney* case a District Court found no probable cause for a robbery complaint which had been issued and convicted a defendant of assault and battery and larceny. The Supreme Judicial Court held that the action of the District Court did not bar a subsequent conviction for the greater offense of robbery in the Superior Court, because the District Court had no jurisdiction to try the defendant on the robbery charge. *Commonwealth* v. *Mahoney, supra* at 513-514. Thus, too, in this case the District Court had no jurisdiction to try the defendants on the rape charges or on the charges of assault and battery by means of a dangerous weapon. G. L. c. 218, § 26. G. L. c. 265, §§ 22 and 15A. The "reduction" (whatever that was intended to mean) of the complaints to assault and battery could have no greater effect than a finding of no probable cause, for that was the limit of the District Court's power over the complaints. *Commonwealth* v. *McCan*, 277 Mass. 199, 202 (1931). *Commonwealth* v. *Mahoney*, 331 Mass. at 511. The principle of the *Mahoney* case has been followed as recently as *Commonwealth* v. *Lovett*, 374 Mass. 394, 397-398 (1978), and its application to cases like this one has been acknowledged in *Commonwealth* v. *Clemmons*, 370 Mass. 288, 291 (1976). In the *Lovett* case, 374 Mass. at 400, the court pointed out — apparently in answer to an argument similar to the one made in this case — that *Blackledge* v. *Perry*, 417 U.S. 21 (1974), had no application because "the prosecution here [and in our case as well] did not increase the severity of the charge in retaliatory response to the defendant's exercise of his right to appeal." (No question of double jeopardy was raised in *Blackledge*.) *Ashe* v. *Swenson*, 397 U.S. 436 (1970), and other cases cited by the defendants — all decided before the *Lovett* case — are inapplicable. They apply "collateral estoppel" where the prosecution seeks to relitigate issues which have been determined adversely to it in courts having jurisdiction. No such issue was determined in the District Court in this case, and the prosecution was free to try the defendants on the indictments it brought. *Commonwealth* v. *Mahoney*, 331 Mass. at 511-512. *Commonwealth* v. *Britt*, 362 Mass. 325, 330 (1972).

2. *Alexander's response.* The court did not err in admitting Alexander's inculpatory response — that "his brother Ciro had cut him after he had hurt a girl" — to a question by Lieutenant Ryan while Alexander was in a hospital where he had gone for treatment of facial lacerations after he left the home of the woman (the victim) who complained that she had been raped. The victim had invited the two defendants and two others to her home after they met (for the first time) in a bar sometime after midnight. Alexander testified that while in the victim's home he had never touched her and denied that he forced her to commit fellatio. The inculpatory response was introduced after Alexander's testimony and was admissible to impeach that testimony even if — which we do not decide (*Commonwealth* v. *Borodine*, 371 Mass. 1, 4 [1976], cert. denied, 429 U.S. 1049 [1977]) —

the Miranda safeguards had been violated. *Commonwealth* v. *Harris*, 364 Mass. 236, 239 (1973). From the testimony of Lieutenant Ryan on voir dire before the admission of Alexander's response, the trial judge could have concluded that it was voluntary and trustworthy. *Commonwealth* v. *Mahnke*, 368 Mass. 662, 692-693 (1975). Lieutenant Ryan testified that Alexander was "upset" but not "groggy, incoherent in speech or manner" and that he (Lieutenant Ryan) had no trouble understanding him. He had just received stitches, and the hospital had finished treating him there. See *Commonwealth* v. *Harrison*, 342 Mass. 279, 285 (1961).

*Judgments affirmed.*

*John C. McBride* for the defendants.

*Michael J. Traft*, Special Assistant District Attorney, for the Commonwealth.