## COMMONWEALTH *vs.* ANDRE NORMAN.

No. 88-P-266.

Essex. November 9, 1988. — March 6, 1989.

Present: BROWN, KAPLAN, & KASS, JJ.

Further appellate review granted, 404 Mass. 1104 (1989).

*Robbery. Larceny. Constitutional Law,* Double jeopardy. *Practice, Criminal,* Double jeopardy, Lesser included offense, Assistance of counsel.

In the circumstances of a criminal defendant's unlawful taking of a motor vehicle, a charge of larceny of the vehicle was a lesser included offense of armed robbery of the vehicle's owner. [85-86]

Where a criminal defendant, having been convicted in a District Court on a charge of larceny arising from his unlawful taking of a certain motor vehicle, was subsequently prosecuted in the Superior Court for armed robbery of the vehicle's owner, based on the same unlawful taking, the defendant's failure to interpose a claim of double jeopardy in the Superior Court did not preclude him from raising that issue on appeal from the armed robbery conviction. [86-88]

A prosecution for armed robbery, based upon the defendant's unlawful taking of a motor vehicle from its owner, was barred on Federal double jeopardy grounds by reason of the United States Supreme Court's holding in *Brown* v. *Ohio*, 432 U.S. 161, 169 (1977), where the defendant has previously been convicted in a District Court of the lesser included offense of larceny based on the same unlawful taking. [88-91]

INDICTMENT found and returned in the Superior Court Department on March 19, 1986.

The case was tried before *Barbara J. Rouse, J.*

*Janis M. Berry* for the defendant.

*S. Jane Haggerty,* Assistant District Attorney, for the Commonwealth.

KASS, J. In *Brown* v. *Ohio*, 432 U.S. 161, 169 (1977), the Supreme Court held that, "Whatever the sequence may be, the [double jeopardy clause of the] Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense."

1. *The problem.* We are to decide whether the *Brown* v. *Ohio* decision renders unlawful the defendant's conviction in the Superior Court on December 4, 1986, of armed robbery of a motor vehicle (a 1985 Honda coupe). Earlier, on June 26, 1986, the defendant had been convicted in the District Court of larceny of the same car, a lesser included offense within armed robbery. If the principle announced in *Brown* invalidates Norman's second — and more serious — conviction, it alters a rule of long standing in Massachusetts: that a trial of a lesser offense in a lower court does not bar the trial of the defendant on the greater offense if the lower court did not have jurisdiction over the greater offense. Jeopardy does not attach, the thought was, to a crime the forum cannot try. *Commonwealth* v. *McCan*, 277 Mass. 199, 204-206 (1931) (indecent assault and battery in the Municipal Court, rape in the Superior Court). *Commonwealth* v. *Jones*, 288 Mass. 150, 151-152 (1934) (operating to endanger in the District Court, manslaughter in the Superior Court). *Commonwealth* v. *Mahoney*, 331 Mass. 510, 513-514 (1954) (larceny in the Municipal Court, robbery in the Superior Court). The question of the effect of the *Brown* case on the classic rule was adverted to in *Commonwealth* v. *Gonzalez*, 388 Mass. 865, 870 n.9 (1983), but not reached because the proceedings in the District Court were determined to be an inquiry into probable cause, not a trial.

Following publication of the *Brown* opinion in 1977, two Massachusetts cases, *Commonwealth* v. *Lovett*, 374 Mass. 394, 396-400 (1978), and *Commonwealth* v. *Nazzaro*, 7 Mass. App. Ct. 859, 859-860 (1979), applied what looks at first like the classic Massachusetts rule. In each of those cases, however, the complaint in the District Court had been faulty because it alleged a crime over which a District Court had no jurisdiction, thus rendering the lower court proceeding a nullity. *Commonwealth* v. *Roby*, 12 Pick. 496, 501 (1832).[1] Although the de-

---

[1] The *Roby* opinion was written by Chief Justice Shaw who, with an enthusiasm for tautology characteristic of the time, pronounced that a judgment which rested upon so flawed a proceeding was to "be deemed a nullity, wholly inoperative and void, and upon which no punishment can be awarded."

fendant had been brought to the bar, there had been, in the eyes of the law, no trial and no punishment.

2. *The facts.* We turn to the facts in the case before us. On November 22, 1985, the defendant, with a woman[2] accomplice, ambushed Cynthia Cowing as Cowing walked from her car to her apartment. A struggle ensued during which the assailants demanded Cowing's car keys. As the three grappled, the assailants repeatedly pummeled the victim, until, in fear and overwhelmed, she surrendered her keys.

Three days later, a Boston police officer investigated a Honda parked late at night in Franklin Park. He surprised a man (the defendant) and a woman, both naked, in the passenger seat. While they dressed, the officer ran a stolen car check and learned the Honda had been stolen in Lynn.

On November 29, 1985, the Commonwealth complained against Norman in the West Roxbury District Court for larceny of a motor vehicle (G. L. c. 266, § 28). Subsequently, on December 9, 1985, the Commonwealth brought a complaint in the Lynn District Court for armed robbery (G. L. c. 265, § 17) of Cowing's 1985 Honda. The latter complaint was supplanted by an indictment of Norman, for armed robbery of Cowing's 1985 Honda, handed up by an Essex County grand jury on January 6, 1986.

So the matter stood when the larceny complaint came up for trial in the District Court in June, 1986. Norman admitted to sufficient facts, was adjudged guilty, and sentenced to two and one-half years in a house of correction.

3. *Status of District Court judgment.* There is an enigmatic (because it precedes the judgment by two days) entry on the West Roxbury District Court docket: "Appeal Fwd. BMC." An appeal from a bench trial to a jury-of-six session,[3] as the government is quick to call to attention, vacates the judgment in the primary session. *Commonwealth* v. *Duquette*, 386 Mass.

---

[2] Some slight doubt about the gender of the accomplice was generated through cross-examination of the victim. Nothing turns on this.

[3] See G. L. c. 278, § 18; Smith, Criminal Practice & Procedure §§ 2781-2788 (2d ed. 1983).

834, 846 (1982), and cases cited. Smith, Criminal Practice & Procedure § 2798 (2d ed. 1983, Supp. 1988). In this case it does not appear that the appeal was ever entered and prosecuted in the jury-of-six session. See G. L. c. 278, § 24. The sentence imposed at the bench trial will then have been reinstated in the jury-of-six session. *Ibid.* If the appeal has been prosecuted, the judgment will perforce be superseded by a judgment of the jury-of-six session for the Commonwealth or for the defendant. The larceny proceeding will not, as the government seems to suggest, self-destruct and vanish. Moreover, the idea of the primary District Court proceeding being supplanted by a trial in the jury-of-six session recognizes that the latter is a repeat trial of the same offense brought to a higher level of the same tribunal by the defendant's choice. What occurs is not double jeopardy but continuing jeopardy, in which, without having to establish error, the defendant has a second chance. See *Justices of the Boston Mun. Court* v. *Lydon*, 466 U.S. 294, 304-313 (1984). That is not what happens if the jury-of-six trial never occurs and that is not what happens if the government, at *its* choice, brings a brand new action in a new forum encompassing the same offense. When the government, on its initiative, brings a successor prosecution, it produces precisely the result which the double jeopardy principle bans: use of the power of the State to wear down the defendant. *Green* v. *United States*, 355 U.S. 184, 187-188 (1957). *Costarelli* v. *Commonwealth*, 374 Mass. 677, 681 (1978). The prohibition against double jeopardy is a constitutional guarantee of a "policy of finality for the defendant's benefit." *United States* v. *Jorn*, 400 U.S. 470, 479 (1971). *Brown* v. *Ohio*, 432 U.S. at 165.

4. *Was the larceny charge a lesser included offense of the robbery charge?* One must pause to ask whether Norman's larceny of Cowing's Honda is, indeed, a lesser included offense of his armed robbery of the same vehicle at the same time. Larceny, in the cases, is "routinely considered a lesser included offense of robbery." *Commonwealth* v. *Kelly,* 24 Mass. App. Ct. 181, 185 (1987). See also *Commonwealth* v. *Novicki*, 324 Mass. 461, 465-467 (1949); *Commonwealth* v. *Hogg*, 365

Mass. 290, 295 (1974); *Commonwealth* v. *Johnson*, 379 Mass. 177, 181 (1979). Larceny in the instant case occurred as a result of the unlawful taking away of the Honda, with the intent to deprive Cowing of it permanently. Robbery included all those elements with the additional element of exercising force against Cowing or putting her in fear. See *ibid.* See *Heard* v. *Jago*, 515 F.Supp. 162, 164 (S.D. Ohio 1980) (grand theft of auto as lesser included offense of robbery); *Kingsbury* v. *United States*, 537 A.2d 208, 211 (D.C. App. 1988) (unauthorized use of an auto as lesser included offense of robbery). Cf. *Costarelli* v. *Commonwealth*, 374 Mass. at 683-684 (unauthorized use of a motor vehicle as lesser included offense of larceny of a motor vehicle). Compare *Illinois* v. *Vitale*, 447 U.S. 410 (1980) (careless failure to reduce speed may not be lesser included offense of manslaughter); *Commonwealth* v. *Dellinger*, 383 Mass. 780, 784-785 (1981).

5. *Failure to raise double jeopardy below.* At the Superior Court level, Norman did not move to dismiss on the ground of double jeopardy. On appeal, he skirts the question whether the double jeopardy defense was waived, choosing instead to argue that the failure to raise the question below constituted ineffective assistance of counsel and that thereby the question is preserved.

Ineffective assistance of counsel, however, is something other than a failure of omniscience. Counsel's failings must be grave and fundamental. *Strickland* v. *Washington*, 466 U.S. 668, 686 (1984). The deficient conduct must fall "measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). See *Commonwealth* v. *McGann*, 20 Mass. App. Ct. 59, 61-62 (1985).

To be sure, *Brown* v. *Ohio*, 432 U.S. 161, had been on the books for some eight years when Norman came to trial in the Superior Court, yet its applicability to the settled Massachusetts practice (discussed *supra*) of trying a lesser offense in the District Court and the greater offense in the Superior Court had not been discussed. A lawyer of exceptionally alert and retentive mind might have seized on the hint in note 9 of *Com-*

*monwealth* v. *Gonzalez*, 388 Mass. at 870, to launch an assault on the familiar procedure. Missing a defense that at the time was novel in Massachusetts is the sort of mistake that may be forgiven the ordinary, fallible lawyer. Compare *Commonwealth* v. *Reid*, 400 Mass. 534, 537 (1987).

Although the Commonwealth has not argued that the double jeopardy point is waived for failure to raise it below, see *Commonwealth* v. *Steward*, 396 Mass. 76, 77 (1985), we consider whether the issue is still open on appeal. Protection against jeopardy is a fundamental constitutional right but that status alone has not put beyond the pale the idea that it may be waived by failure to raise it at a lower level. A double jeopardy point may, for example, be waived by a plea bargain which contemplates a trial for a higher offense should the defendant not honor his end of the bargain. *Ricketts* v. *Adamson*, 483 U.S. 1 (1987). In *Costarelli* v. *Commonwealth*, 374 Mass. at 680-681, the court concluded that the double jeopardy defense had not been waived but, by pondering the question, implied that it could be. *Commonwealth* v. *Dunnington*, 390 Mass. 472, 479 (1983), concludes that a defendant may not raise for the first time on appeal from his conviction at a de novo jury trial in the District Court that insufficiency of evidence at the primary bench trial should, on double jeopardy principles, have barred the jury trial. In *Commonwealth* v. *Deeran*, 397 Mass. 136 (1986), a hung jury led to a second trial at which the defendant was convicted. Double jeopardy was not raised in a direct appeal, which the defendant lost. Double jeopardy surfaced in a motion for postconviction relief under Mass.R.Crim.P. 30, 378 Mass. 900 (1979), but was not considered because the defendant had not raised it on either his first appeal or in an earlier motion for a new trial.

The *Dunnington* and *Deeran* cases involved waiver of the double jeopardy point as a case stuttered from stage to stage within the same court which had jurisdiction over the case in the first instance.

When a case involves successive prosecution in separate courts, the prohibition against double jeopardy touches on the "very power of the State to bring the defendant into court to

answer the charge brought against him." *Blackledge* v. *Perry*, 417 U.S. 21, 30 (1974). *Commonwealth* v. *Clark*, 379 Mass. 623, 626 (1980). If the power of a court to entertain a case is implicated, the question is similar to that of jurisdiction, a claim which may be raised at any stage of the proceedings. The double jeopardy issue has not been lost.

6. *The jurisdictional exception to double jeopardy.* As we observed earlier in this opinion, Massachusetts cases had carved a jurisdictional exception to general double jeopardy principles: though a defendant had been convicted of a lesser offense in a lower court, that defendant might be tried for a greater offense in a higher court if the inferior court lacked jurisdiction over the greater offense. Three of the relatively contemporary cases which invoked the jurisdictional exception, *Commonwealth* v. *McCan*, 277 Mass. at 204-206, *Commonwealth* v. *Jones*, 288 Mass. at 151-152, and *Commonwealth* v. *Mahoney*, 331 Mass. at 513-514, were decided before three Supreme Court cases which bear on the problem.

*Benton* v. *Maryland*, 395 U.S. 784, 794 (1969), applied the double jeopardy prohibition of the Fifth Amendment of the United States Constitution to the States through the Fourteenth Amendment. Not quite a year later, in *Waller* v. *Florida*, 397 U.S. 387, 394-395 (1970), the Court considered successive prosecutions for destruction of city property (the defendant had participated in removing a canvas mural from City Hall) and disorderly breach of the peace (marching the mural through the streets) in the Municipal Court and for larceny in the Circuit Court. Dual sovereignty, the Court held, i.e., that different levels of government were operating, was not justification for multiple prosecutions in the same State for the same alleged offense; the second trial constituted double jeopardy. The third pertinent Supreme Court case is *Brown* v. *Ohio*, 432 U.S. 161. It was decided after the *Waller* case and holds, as noted at the beginning of this opinion, that a State may not prosecute a defendant a second time for an offense which comprehends a lesser offense of which the defendant has already been convicted.

In the wake of the *Waller* opinion, Federal courts and many State courts began to beat a retreat from the jurisdictional exception to double jeopardy. *Culberson* v. *Wainwright*, 453 F.2d 1219, 1220 (5th Cir.), cert. denied, 407 U.S. 913 (1972). *Robinson* v. *Neil*, 366 F. Supp. 924, 928-929 (E.D. Tenn. 1973). *State* v. *Laguna*, 124 Ariz. 179, 180 (Ct. App. 1979). *State* v. *Anonymous*, 31 Conn. Supp. 292, 295 (1974). *State* v. *Shepard*, 299 So.2d 644, 645 (Fla. Dist. Ct. App. 1974), overruled on other grounds, *Stanfill* v. *State*, 384 So.2d 141, 143 (Fla. 1980) (whether first proceeding was criminal). *Perkins* v. *State*, 143 Ga. App. 124, 125-126 (1977). *People* v. *Gray*, 69 Ill. 2d 44, 52 (1977), overruled on other grounds, *People* v. *Totten*, 118 Ill. 2d 124, 139 (1987) (definition of "same offense"). *State* v. *Stewart*, 223 N.W.2d 250, 251 (Iowa 1974). *People* v. *Kretchmer*, 66 Mich. App. 548, 550 (1976), rev'd on other grounds, 404 Mich. 59 (1978) (whether two charges were same offense). *State* v. *Dively*, 92 N.J. 573, 586-587 (1983). *State* v. *Trivisonno*, 112 R.I. 1, 5 (1973). *State* v. *Carter*, 291 S.C. 385, 388 (1987). *Benard* v. *State*, 481 S.W.2d 427, 429-431 (Tex. Crim. App. 1972).

If, the courts reasoned, the constitutional law of the land forbade successive prosecutions for the same criminal act, that doctrine ought not to be subverted because courts of limited jurisdiction had been established within the same sovereign. For the defendant obliged to run the gauntlet more than once, the ordeal would not be less painful because the several courts he was haled before had discrete jurisdiction. Contrast *Daniel* v. *Warden, State Correctional Inst. at Huntington, Pa.*, 794 F.2d 880, 883-884 (3d Cir. 1986), in which the *Waller* case is not alluded to and which dealt with territorial limitations on jurisdiction in Pennsylvania applicable when different criminal acts took place in different counties; *State* v. *Manzares*, 100 N.M. 621, 623-624 (1983), cert. denied, 471 U.S. 1057 (1985).

*Commonwealth* v. *Lovett*, 374 Mass. at 396-399, dealt with a variant of the jurisdictional exception, that no jeopardy attaches if a proceeding is altogether void because the first court

to act lacked jurisdiction over the case.[4] See also *United States* v. *Ball*, 163 U.S. 662, 669 (1896); *United States* v. *Wilson*, 420 U.S. 332, 347 (1975); *Serfass* v. *United States*, 420 U.S. 377, 391-392 (1975); *State* v. *Laguna*, 124 Ariz. at 180; *Benard* v. *State*, 431 S.W.2d at 430. These cases discuss prosecutions misbegotten in the inception and they recognize a societal interest in not having an offender go entirely free from punishment because the government walked into the wrong forum in the first instance. They present situations different from what *Brown* v. *Ohio*, *supra*, condemns, *viz.*, the prosecutorial equivalent of claim splitting.

On its face the *Brown* case has much in common with the one before us. Brown, the defendant in the Ohio case, stole a car in East Cleveland. Police picked him up nine days later in Wickliffe, Ohio. He was charged with the misdemeanor of taking the car and driving it without the owner's consent. Upon a plea of guilty in a Wickliffe court, Brown was sentenced to thirty days in jail and received a $100 fine. Thereafter he was indicted in Cuyahoga County for the felony of auto theft and, after a plea in which the double jeopardy point was preserved, Brown was further sentenced. It was the latter conviction and punishment which the Court determined was double prosecution for the same offense by a single sovereign.[5] We think that the force of the opinion in *Brown* v. *Ohio* cannot be escaped, on its own terms and especially when read with *Waller* v. *Florida*, *supra*, by recourse to the jurisdictional exception, other than in the example illustrated by *Commonwealth* v. *Lovett*, 374 Mass. at 396-399, in which the first proceeding is altogether void.

If the jurisdictional exception is not given the full play it has historically received, the Commonwealth warns, an adroit

---

[4] Lovett, although convicted and sentenced in the lower court, served no time because he was released on his own recognizance when he appealed for a trial de novo. One may ponder the force of the "altogether void" jurisdictional exception if the defendant is incarcerated on the basis of the void proceeding.

[5] The dual sovereignty of the United States and any one of the States persists. See *Heath* v. *Alabama*, 474 U.S. 82, 87-93 (1985).

defendant can manipulate the system by admitting to the facts of, or pleading guilty to, a lesser offense so as to head off trial of a greater offense. Acceptance of a guilty plea acts as former jeopardy. *Commonwealth* v. *Therrien*, 359 Mass. 500, 503-504 (1971). *Commonwealth* v. *Aldrich*, 21 Mass. App. Ct. 221, 224 (1985). Assuming, for the sake of discussion, that the dark picture which the Commonwealth paints reflects reality, the answer to the problem is not to deprive defendants of their constitutional right to be free from successive prosecutions but, if greater charges are in the offing, for the government to ask that the District Court judge reject the proffered guilty plea. Given contemporary communications resources, it ought not to be a herculean task to find out if, as in the instant case, a greater charge is pending, and to bring it to the attention of the judge to whom a plea or admission is offered on the lesser offense.

For the reasons discussed, we hold that the prosecution against Norman in the Superior Court was barred by the prohibition against double jeopardy. The judgment against him on the charge of armed robbery is reversed and the verdict is set aside.[6] The indictment is to be dismissed.

*So ordered.*

---

[6] Another important qualification to the prohibition against double jeopardy, the "necessary facts" exception, remains in full vigor. This comes into play when facts underlying the second proceeding could not have come to light during the first trial. See *Diaz* v. *United States,* 223 U.S. 442, 449 (1912); *Garrett* v. *United States,* 471 U.S. 773, 791 (1985). We intimate no opinion on the "same transaction" principle. See *Commonwealth* v. *Gallarelli,* 372 Mass. 573, 578, and the concurring opinion of Justice Kaplan, at 580-582 (1977); *Commonwealth* v. *Gonzalez,* 388 Mass. at 870 n.9.