LUCIEN SKINNER *vs.* PRESIDENT, DIRECTORS AND COMPANY OF THE MERCHANTS' BANK.

Money fraudulently taken from the owner by his clerk, and paid into a bank, to a defaulting teller therein, at his request, for the purpose of enabling him to exhibit it to the bank officers as money of the bank, and thus to conceal his embezzlement, does not become the money of the bank; although, in examining and settling the accounts of the defaulting teller, and before the discovery of the embezzlement, it was received and counted by different officers of the bank as money of the bank, and treated as such, and put to his credit on the books, and afterwards returned to his custody. And the owner may maintain an action against the bank to recover back the same.

CONTRACT, to recover the sum of $7000, as money had and received by the defendants to the plaintiff's use.

At the trial in this court, before the chief justice, the plaintiff offered evidence to prove that in March 1855 he carried on the business of a broker in Boston, and that William F. Davis, a clerk employed by him on a salary, had the principal charge thereof, and usually signed checks in his name; that on the 26th of said March, Thomas W. Hooper, the paying teller of the defendants, informed Davis that his cash was to be examined, and he wanted $7000, and requested him to leave that sum until the next day; that Hooper did not, on that day, make to Davis any suggestion or statement as to the place where, or method by which, the money could be obtained; that Davis accordingly drew a check for $8000, in the plaintiff's name, or

the Grocers' Bank, where the plaintiff kept an account, and took it to the Atlantic Bank, and received the amount from Mr. Ward, the teller, $1000 of which he used in the plaintiff's business, and delivered $7000 at the defendants' counter to Hooper, who put it into a drawer where money of the defendants was usually kept; that on the 22d day of the same March there had been a similar transaction between the same parties, and on that occasion Hooper had informed Davis that he expected an examination in a day or two, and wished for $7000, to which Davis replied that the amount was more than he could arrange, and Hooper told him to " take his check, and fix it, and he could probably arrange it with Ward," and that this was accordingly done, but the examination not being then made, Hooper returned the money, saying that he should probably want it again in a day or two, of which Ward was informed; that on the afternoon of March 26th, and after the money now in suit was received by Hooper, there was an examination of his cash by the president and one of the directors of the Merchants' Bank; that the money was received by them from the receiving teller, and counted, and found to be of the right amount, and returned to Hooper's custody; that the receiving teller kept a debit and credit account with the paying teller, charging the latter with the amount of bills delivered to him in the morning, and entering to his credit the amount received from him at the close of business, each day; that on the 26th of March, Hooper was in fact a defaulter to the bank to a large amount, and, on the next morning, committed suicide; that Davis had formerly been a member of the firm of Willis & Co., brokers, who failed the year before; that the plaintiff was ignorant of the above transactions of Davis until after March 26th, and never consented to the same; and that he paid the check for $8000, and on the 4th of April 1855 he demanded the $7000 of the defendants, but they have not paid the same.

Upon the foregoing evidence, with other evidence which is now immaterial, the defendants stating that they preferred to offer none, the case was taken from the jury, with the consent of the parties, and reserved for the determination of the whole court.

*C. B. Goodrich & L. Shaw*, for the plaintiff.

*S. Bartlett & A. H. Fiske*, for the defendants. This case is distinguishable from *Atlantic Bank* v. *Merchants' Bank*, 10 Gray, 532. The leading proposition of fact on which that case turned was, that Peabody, a broker, and Ward, a confidential officer of the Atlantic Bank, entered into a fraudulent conspiracy with Hooper, to enable him to conceal his defalcation by abstracting the funds of the Atlantic Bank by an embezzlement amounting to a larceny. In the present case, there was no embezzlement. The utmost that can be made of the facts is, that Davis exceeded his authority by drawing a check partly for purposes within and partly not within the scope of his employer's business. The validity of the check as against the plaintiff is not denied. The vital point to be established by the plaintiff is, that Hooper knew what check Davis was to use, or did use, to get the money; or that it was not his own check; or that the money was not obtained on his own credit. In this case, the defendants submit that the plaintiff has failed to show what was shown in the case of the Atlantic Bank, namely, a conspiracy with his agent, to which Hooper was a party, to defraud him of this money.

In the former case, the defendants were declared not to stand in the position of holders for value without notice upon two grounds: 1. That, upon the proofs in that case, there was no intent of Hooper to pay, or of the defendants to receive in payment, the money, and so there was no alteration of the defendants' position; 2. That from Hooper's relation to the bank, and from the fact of his falsely certifying the check, as a part of the machinery of the fraud, the defendants received the money with constructive notice of the fraud. Upon the first of these grounds, the evidence in the present case discloses a state of facts entirely new, namely, that Hooper delivered these bills to the receiving teller, received credit for them on account, and that the directors received them from the receiving teller. The second of these grounds is inapplicable to the facts in this case.

If, however, the facts of this case shall not distinguish it from the former case, the defendants respectfully but most earnestly

ask the court to revise some of the doctrines of that case. And, 1. It is submitted that the proposition that no title passed to the bank in bills placed with its other funds to cover up a deficiency, and treated as its own by the bank in accounting with its teller, is not well supported by the suggestion that there was a want of intent on the part of the teller that the bank should take title to them, his purpose being to return them the next morning, and a want of intent on the part of the bank to receive them in payment, since they were ignorant of any deficiency. This would be equally true if Hooper had supplied the deficiency from " some secret hoard of his own, outside the bank," which the court admit, in discussing another point of the case, would pass the title to the bank. The true principle would seem to be, that the law impresses upon the transaction the intent and effect which Hooper designed to produce, and which he did produce, upon the minds of the directors, namely, that the money placed in their hands was the money of the bank.

2. The proposition as to these bills, " that the only title acquired in them being through the agency of Hooper, his knowledge of the fraudulent title under which he acquired and held them was constructively the defendants' knowledge," if the word " agency" be used in its technical sense, is indisputable. But that the facts detailed by the court do in law, as to the transaction in question, constitute such agency within the meaning of the rule, is, we respectfully submit, an error. No principle rests upon stronger foundations than that which affirms that the acts or declarations of an agent, not in the course of the principal's business, and in no way connected therewith, do not affect the principal.

It is too clear for argument that the act of Hooper in obtaining this money, whether by loan or fraudulent conspiracy with Davis for the purpose of making good his default to the bank, was not in form or substance as their agent, or connected with their business. When, therefore, the proposition asserts that the only title of the bank was acquired through the *agency* of Hooper, it should have said " through the *act* of Hooper."

Upon the grounds of agency, therefore, the bank cannot be affected by notice.

HOAR, J. We are unable to see any distinction between this case and that of the *Atlantic Bank* v. *Merchants' Bank*, 10 Gray, 532, which can withdraw it from the operation of the principles on which that case was decided.

The grounds of that decision were substantially these : That the money of the Atlantic Bank was obtained from it without consideration, by means of a gross fraud and conspiracy between Hooper, a defaulting teller of the Merchants' Bank, Ward, a teller of the Atlantic Bank, and a broker named Peabody; that it was paid into the Merchants' Bank without any consideration, to enable Hooper to conceal a deficiency of cash which he had previously embezzled; that the Merchants' Bank, receiving it through their officer and agent, Hooper, who was fully cognizant of the fraud and a participator in it, took it with full notice, and acquired no property in it against the true owner; that passing it from one officer to another in the Merchants' Bank, after it had been received, did not change the property; and that the rule that a payment of a debt in current money to one who receives it in good faith is a valid payment, and cannot be avoided, although the person paying the money procured it fraudulently, had no application, because the money was never received in payment of any debt from Hooper, but was counted and treated as the property of the bank, the other officers of the bank having no knowledge or belief that Hooper was indebted to it.

All these facts find a parallel in the case at the bar. The evidence seems to establish clearly a fraudulent conspiracy between Davis, the plaintiff's clerk, and Hooper and Ward, to obtain the money of the plaintiff to use for the purpose of concealing Hooper's embezzlement. Davis was merely a clerk of the plaintiff, upon a salary of $100 a month; and without apparent means to make such a loan. He had told Hooper that the amount was more than he could arrange. The firm to which he had belonged had failed, and he does not appear to have been doing any business on his own account. He drew checks in

the name and on account of the plaintiff, to be used in his business. Hooper told him to draw his check, and arrange it with Ward. Ward was obviously the agent of Hooper in the execution of the fraudulent plan, and when Hooper sent Davis to him to perfect the arrangement, the knowledge of Ward must be considered the knowledge of Hooper; and Ward certainly knew the precise instrumentalities used to obtain the money. But if Hooper had supposed that Davis was to use his own check, and obtain bills of the Atlantic Bank upon it from Ward, the result would be the same. In that case, Hooper would have thought that the money which was dishonestly obtained for him was the money of the Atlantic Bank, and would not have known the specific fraud practised on the plaintiff. But he would have known just as well that it was not Davis's money, because he knew and had been told that Davis had not the means to procure it; and he expected that Davis would get it, through Ward, by means of a fraud on somebody. It was then money belonging to the plaintiff, fraudulently taken by his clerk, and paid into the Merchants' Bank under Hooper's direction, not as a loan from Davis to Hooper, but as money fraudulently procured by Davis, to be shown to the defendants by a deceit and imposition as their money, and then to be returned to Davis, and secretly restored by him to its owner, as on a former occasion.

The circumstances of the reception of the money being therefore substantially alike in the two cases, and it being received by the defendants without consideration through their officer, who knew all the material facts, we are next to consider whether there was anything done afterward which would change the property, and vest it in the defendants.

It appears that at the close of business in the forenoon, all the money of the defendants under the control of Hooper was passed by him to the receiving teller, who entered it to the credit of Hooper, as paying teller, upon the books of the bank; that it was handed by the receiving teller to the directors when they came to count Hooper's cash in the afternoon, and, after it was counted, was returned to Hooper by them.

We think this was no more a payment by Hooper than his

handing it directly to the committee of the directors would have been. He had it in his custody as the property of the bank, and not as his own property. He could give the bank no property in it, and he did not intend to give them any. The receiving teller received and entered it, not as a payment by Hooper of a debt due by him to the bank, but as a statement of the bank's money in Hooper's custody, for the mere purpose of seeing that the amount was correct, and of thus enabling the bank to take account of all its possessions. The money was no more in the possession of the bank when the receiving teller took it, than it was before when Hooper had it. This case merely discloses two countings where the other case disclosed one.

The ground of the former decision of the court is therefore equally applicable here; that money obtained by fraud and conspiracy, received by the bank through Hooper, a partaker in the fraud, without consideration, did not become the property of the bank; and that no transfer from one officer to another in the bank, for the purpose of counting and ascertaining what money the bank had, could change the property, the bank counting it as their own money, and being induced by imposition to think it their own, when it was not; and never having received it from Hooper as the payment of a debt ascertained and admitted to be due from him on account of a discovered embezzlement. When the defendants, therefore, subsequently appropriated it as their own, they applied the money of the plaintiff to their own use; and though this was done under a misapprehension, they are responsible for the amount.

The majority of the court are therefore of opinion that the authority of the previous decision is conclusive, and that under the agreement of the parties there should be

*Judgment for the plaintiff.*