COMMONWEALTH vs. MARTIN J. SPEAR .

No. 95-P-932.

Hampden. September 13, 1996. - October 6, 1997.

Present: WARNER, C.J., ARMSTRONG, & PERRETTA, JJ.

*Constitutional Law,* Double jeopardy, Waiver of constitutional rights, Confrontation of witnesses. *Waiver. Witness,* Child, Expert, Credibility. *Evidence,* Expert opinion, Credibility of witness.

This court concluded that, in the circumstance of the retrial after mistrial of a criminal case, in which the defendant, representing himself, did not assert the defense of double jeopardy by pretrial motion or otherwise, the defendant waived that defense and there was no requirement that the waiver have been made knowingly and intelligently. [584-587]

Discussion of other jurisdictions' treatment of the issue of waiver of the double jeopardy defense by the defendant's failure to raise it. [587-589]

The special seating arrangements at the trial of rape indictments, in which the child complainant sat in a chair in front of the jury box facing the jury and was not required to face the pro se defendant at the defense table, and for which the Commonwealth had not demonstrated a compelling need, violated the defendant's right of confrontation guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights: the defendant was entitled to a new trial. [589-592]

At the trial of rape indictments, admission in evidence of the testimony of a social worker who was also the child complainant's treating therapist impermissibly intruded on the jury's role of assessing the complainant's credibility and constituted reversible error. [592-594]

INDICTMENTS found and returned in the Superior Court Department on February 19, 1992.

The cases were tried before *Cortland A. Mathers,* J.

*Benjamin H. Keehn,* Committee for Public Counsel Services, for the defendant.

*Jane Davidson Montori,* Assistant District Attorney, for the Commonwealth.

WARNER, C.J. On February 19, 1992, a grand jury returned

fifteen separate indictments charging the defendant with rape of a child with force in violation of G. L. c. 265, § 22A (seven indictments), and indecent assault and battery of a child under fourteen in violation of G. L. c. 265, § 13B (eight indictments). Each of the rape indictments was identically worded, as were those charging the defendant with indecent assault and battery.[1] The conduct that gave rise to the charges allegedly occurred while the defendant was living with the seven year old complainant, her mother and her two brothers, in an apartment in Springfield.[2]

After a jury trial, at which the defendant was represented by counsel, the judge dismissed all but five of the indictments, (two alleging rape and three alleging indecent assault and battery). The jury subsequently acquitted the defendant on two counts of indecent assault and battery, but were unable to reach unanimous verdicts on the remaining charges. Accordingly, the judge declared a mistrial with respect to those charges.

The defendant was retried on two indictments alleging rape of a child and one alleging indecent assault and battery. At the second trial, the Commonwealth presented several witnesses in addition to the child complainant, including her mother, her aunt, and her treating therapist. The defendant, who appeared pro se, did not testify or present any evidence in his own behalf. He was convicted on all charges.

On appeal, the defendant contends that the second trial violated his constitutional right to be free from double jeopardy. He further claims that the special seating arrangements in effect at that trial, during the child's testimony, violated his confrontation rights pursuant to art. 12 of the Massachusetts Declaration of Rights and the Sixth and Fourteenth Amendments to the United States Constitution, and that the judge committed reversible error by admitting improper opinion testimony from the child's therapist. We reverse.

*Double Jeopardy*

The defendant claims that his second trial, on indictments that were worded identically to those which formed the basis of

---

[1]The indictments alleged that the crimes were committed "on or between January 11, 1991 and February 19, 1991."

[2]The defendant met the child complainant's mother on Labor Day weekend, 1990, and shortly thereafter moved into the apartment she shared with her children. He frequently took care of the children while their mother was at work.

acquittals in his first trial, violated his right to be free from double jeopardy as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, art. 12 of the Massachusetts Declaration of Rights, and Massachusetts common law.[3] This issue is of particular importance because a decision in the defendant's favor would not only require reversal of his convictions but would also preclude any retrial. The defendant, however, did not assert the defense of double jeopardy by pretrial motion or otherwise at his second trial, and the Commonwealth argues that this failure amounts to a waiver of his right to do so here. The defendant maintains that in the absence of a knowing and intelligent waiver, he cannot be deemed to have waived his double jeopardy claim. See *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938).[4]

The precise issue presented: whether, in the absence of a knowing and intelligent waiver, a defendant may raise the defense of double jeopardy for the first time on direct appeal from the proceeding that allegedly violated his protected rights, is a matter of first impression in this Commonwealth. See *Commonwealth* v. *Sanchez*, 405 Mass. 369, 373 n.2 (1989). It is, however, well established that "[a] person may waive his statutory and even his constitutional rights" in certain circumstances. *Spence* v. *Reeder*, 382 Mass. 398, 411 (1981), citing *Johnson* v. *Zerbst*, 304 U.S. at 464. Moreover, "[n]ot every asserted waiver of a constitutional right by a criminal defendant [must be] tested by the knowing and intelligent waiver standard." *Spence* v. *Reeder, supra*, citing *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 235, 237 (1973) ("Our cases do not reflect an uncritical demand for a knowing and intelligent waiver in every situation where a person has failed to invoke a constitutional protection").

With respect to a defendant's constitutional immunity from double jeopardy, although the "[p]rotection . . . is a fundamental constitutional right, . . . that status alone has not put beyond the pale the idea that it may be waived by failure to raise it at a lower level." *Commonwealth* v. *Norman*, 27 Mass. App. Ct. 82,

---

[3] "Although [the Supreme Judicial Court] has never explicitly stated that our Declaration of Rights includes a double jeopardy guarantee . . ., protection against double jeopardy in this Commonwealth has long been part of the common law" (citation omitted). *Lydon* v. *Commonwealth*, 381 Mass. 356, 366, cert. denied, 449 U.S. 1065 (1980).

[4] The Commonwealth does not claim that any waiver was made knowingly and intelligently.

87, *S.C.*, 406 Mass. 1001 (1989). *Commonwealth* v. *Hrycenko*, 417 Mass. 309, 313-314 (1994). Indeed, the Supreme Judicial Court has stated that the proper time for determining the validity of a defense of double jeopardy is prior to the proceeding that would offend the protected rights. *Lydon* v. *Commonwealth*, 381 Mass. 356, 360 n.7, 367, cert. denied., 449 U.S. 1065 (1980) ("If there is a valid double jeopardy claim, it should be dealt with before, rather than after, the second trial"). That court has also suggested, however, that there may be situations in which the waiver of a defendant's double jeopardy rights would be tested by the "knowing" and "intelligent" standard of *Johnson* v. *Zerbst*. *Commonwealth* v. *Deeran*, 397 Mass. 136, 141 (1986) (*"Zerbst* [standard] applies only to a defendant's 'consent' to the actual relinquishment of [a] constitutional right . . . [which] occurred, if at all, when [the defendant] stood silent at the time of his retrial"). Nevertheless, our appellate courts have not applied the *Zerbst* standard to the waiver of a defendant's right to raise a double jeopardy defense. Defendants have, therefore, been deemed to have waived the right to assert the defense simply by failing to do so at various stages in the trial and appellate process. See, e.g., *Commonwealth* v. *Dunnington*, 390 Mass. 472, 479 (1983) (waiver for failing to assert defense at de novo jury trial following bench trial); *Commonwealth* v. *Deeran*, 397 Mass. at 142 (waiver for failing to assert defense in first motion for a new trial). See also *Poretta* v. *Commonwealth*, 409 Mass. 763, 769 (1991) (permissibility of reprosecution following the defendant's "successful motion for mistrial does not depend on whether the motion satisfied the 'knowing, intelligent, and voluntary' standard of *Johnson* v. *Zerbst*"). Cf. *Commonwealth* v. *Norman*, 27 Mass. App. Ct. at 87-88 (finding no waiver, but distinguishing the case on the ground that it involved successive prosecutions in different courts, thereby implicating issues similar to jurisdiction, which may be challenged at any time).

General Laws c. 277, § 47A, and Mass.R.Crim.P. 13, 378 Mass. 871 (1979), govern pretrial motions in criminal cases, and support the principle that the constitutional immunity from double jeopardy is waived if not affirmatively pleaded by a defendant prior to a second trial. The statute and the rule contemplate the raising of affirmative defenses and objections by pretrial motion, and the language of both is clear enough: "All defenses available to a defendant by plea, other than not

guilty, shall only be raised by a motion to dismiss or by a motion to grant appropriate relief." Mass.R.Crim.P. 13(c)(1). Moreover, "[a] defense or objection which is capable of determination without trial of the general issue *shall* be raised before trial by motion" (emphasis added). Mass.R.Crim.P. 13(c)(2). In addition, "any defense or objection based upon defects in the institution of the prosecution or in the complaint or indictment, other than a failure to show jurisdiction . . . or to charge an offense, shall only be raised prior to trial and only by a motion in conformity with the requirements of the Massachusetts Rules of Criminal Procedure. The failure to raise any such defense or objection by motion prior to trial shall constitute a waiver thereof. . . ." G. L. c. 277, § 47A. See Smith, Criminal Practice & Procedure §§ 1300-1302 (2d ed. 1983) (restating the rule and the statute and indicating that the defense of double jeopardy is properly raised by pretrial motion to dismiss).

Pursuant to the rule and the statute, we conclude that the defense of double jeopardy is indeed waived if not raised by a defendant prior to a second trial. Absent any clear, statutory or constitutional mandate to the contrary, we decline to impose a requirement that in order to be effective, such waiver must be made knowingly and intelligently. See *Commonwealth* v. *Amirault*, 424 Mass. 618, 651 n.23 (1997) (declining to "add [the right of face-to-face confrontation] to the very short list of rights" that must be relinquished personally by a defendant). We hold, therefore, that by failing to assert the defense of double jeopardy prior to his second trial, the defendant waived the right to do so here.[5, 6]

Our resolution of the waiver issue is in accord with the treatment of the issue in other jurisdictions. Numerous Federal appellate decisions have relied on Fed.R.Crim.P. 12(b), which is similar to Mass.R.Crim.P. 13 and G. L. c. 277, § 47A, in holding that a defendant's failure to assert the defense of double jeopardy prior to or at the trial that allegedly offended the

---

[5]The fact that the defendant was not represented by counsel at the time his double jeopardy defense should have been raised does not alter our conclusion. "[P]ro se litigants are held to the same standards as practicing members of the bar." *Commonwealth* v. *Jackson*, 419 Mass. 716, 719 (1995).

[6]We express no opinion regarding the substantive merits of the defendant's claim, nor do we suggest that this waiver be construed as a bar to the defendant's right to challenge future violations of double jeopardy principles in the event of a retrial.

protected rights, constituted a waiver of the right to do so on appeal.[7] See, e.g., *Barker* v. *Ohio*, 328 F.2d 582, 584-585 (6th Cir. 1964); *Haddad* v. *United States*, 349 F.2d 511, 514 (9th Cir.), cert. denied, 382 U.S. 896 (1965); *United States* v. *Scott*, 464 F.2d 832, 833 (D.C. Cir. 1972); *Paul* v. *Henderson*, 698 F.2d 589, 592 (2d Cir.), cert. denied, 464 U.S. 835 (1983); *United States* v. *Milhim*, 702 F.2d 522, 524 (5th Cir. 1983); *United States* v. *Bascaro*, 742 F.2d 1335, 1365 (11th Cir. 1984), cert. denied, 472 U.S. 1017 (1985); *United States* v. *Jarvis*, 7 F.3d 404, 409 (4th Cir. 1993), cert. denied, 510 U.S. 1169 (1994). See also 1 Wright, Federal Practice and Procedure § 193, at 705-706 (2d ed. 1982) ("defenses and objections capable of determination without . . . trial such . . . as former jeopardy . . . are waived if not raised at . . . trial"). But see *United States* v. *Young*, 503 F.2d 1072, 1075 (3d Cir. 1974) (waiver of double jeopardy defense must be intentional); *Parker* v. *United States*, 507 F.2d 587, 588 & n.1 (8th Cir. 1974), cert denied, 421 U.S. 916 (1975) (questioning earlier decisions finding procedural waiver without a voluntary relinquishment of immunity from double jeopardy); *United States* v. *Broce*, 753

---

[7]Rule 12 of the Federal Rules of Criminal Procedure provides, in relevant part:

> "(b) Pretrial Motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. . . . The following must be raised prior to trial:

> "(1) Defenses and objections based on defects in the institution of the prosecution; or

> "(2) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense). . . .

> "(f) Effect of Failure to Raise Defenses or Objections. Failure by a party to raise defenses or objections or to make requests which must be made prior to trial . . . shall constitute waiver thereof, but the court for good cause may grant relief from the waiver."

The distinction contained in Fed.R.Crim.P. 12, between defenses and objections which must be raised by pretrial motion or waived, and those that may, at the defendant's option, be raised by pretrial motion, does not exist under Mass.R.Crim.P. 13, or G. L. c. 277, § 47A. The distinction in the Federal rule accounts for the position taken by some Federal courts, requiring only that the defense of double jeopardy be raised "at some time in the proceedings before the [trial] court," and not necessarily prior to trial. *United States* v. *Jarvis*, 7 F.3d 404, 409 (4th Cir. 1993), cert. denied, 510 U.S. 1169 (1994).

. F.2d 811, 822 (10th Cir. 1985) (waiver must be "informed and intentional"); *United States* v. *Rivera*, 872 F.2d 507, 509 (1st Cir.), cert. denied, 493 U.S. 818 (1989) (waiver of a constitutional right must be "voluntary, knowing [and] intelligent"). The highest courts of other States have reached similar results. See, e.g., *State* v. *Linscott*, 416 A.2d 255, 258 (Me. 1980); *State* v. *Price*, 544 A.2d 184, 185 (Conn. 1988); *State* v. *Thomas*, 654 A.2d 327, 330 (R.I. 1995).

*The Right of Confrontation*

We turn to the defendant's claim that the special seating arrangements in effect at his second trial deprived him of his constitutional right of confrontation, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution and the Massachusetts Declaration of Rights.[8] This issue is controlled in all material respects by the Supreme Judicial Court's recent decision in *Commonwealth* v. *Amirault*, 424 Mass. 618 (1997). Under the authority of *Amirault*, we must conclude that the defendant's art. 12 rights have been violated. Accordingly, we need not address his Federal constitutional claim. See *Commonwealth* v. *Johnson*, 417 Mass. 498, 500 (1994).

Article 12 provides that "every subject shall have a right . . . to meet the witnesses against him face to face." This language has been construed literally, as requiring not only that a defendant be given an opportunity to observe the faces of the witnesses testifying against him, *Commonwealth* v. *Johnson*,

---

[8]The Commonwealth argues that, even if the seating arrangement was improper, the defendant waived his right to object to it and that, accordingly, the issue was not properly preserved for review. We disagree. Compare *Commonwealth* v. *Amirault*, 424 Mass. 618, 623, 626, 645-646 (1997) (confrontation issue waived where experienced defense counsel participated in designing special seating configuration and specifically declined to challenge the arrangement on confrontation clause grounds, despite trial judge's obvious invitation to do so).

The *Amirault* case involved different circumstances from those before us. First, here there is no question that the defendant objected to the proposed seating arrangement. Although the objection was not based specifically on the ground that the arrangement violated his confrontation rights, the defendant did refer to the Massachusetts Constitution and to the case of *Commonwealth* v. *Conefrey*, 410 Mass. 1, 14 (1991), which addressed the issue in detail. Moreover, the defendant thoroughly articulated the basis of his objection the following day in support of his motion for a mistrial. Although the defendant's objections may have been inartfully stated, we think the confrontation issue was properly preserved for review.

417 Mass. at 502, but also that the testifying witness "give his testimony to the accused's face." *Commonwealth* v. *Amirault*, 424 Mass. at 632. Any arrangement that allows the witness to "testify quite comfortably and naturally without ever having the accused in [his] field of vision" is impermissible. *Ibid.*

Prior to trial, the judge allowed the Commonwealth's motion requesting special courtroom seating for the child complainant, who was nine years old at the time.[9] It is undisputed that such procedures were implemented. There is, however, considerable disagreement regarding the precise position of the child during her testimony. The defendant claims that she was positioned with her back toward him, making it impossible for him to see her face, and difficult for him to hear her responses to certain questions during both direct and cross-examination. The Commonwealth argues that the defendant could see the child's profile, and that she may actually have looked at him on at least two occasions. It is apparent from the record, however, that during her testimony, the child sat in a chair in front of the jury box facing the jury, and was not required to face the defendant. It is also undisputed that the defendant, acting pro se, was required to remain standing behind counsel table during his cross-examination. Moreover, counsel for the Commonwealth conceded at oral argument that the prosecutor was seated nearest to the jury box and therefore closest to the child, while the defense table was located "furthest from the jury." In these circumstances, we cannot imagine a scenario in which the child would not have been "comfortably shield[ed] . . . from a face-to-face meeting" with the defendant. *Commonwealth* v. *Amirault*, 424 Mass. at 632-633 n.9. The defendant's confrontation rights were, therefore, violated, notwithstanding any possibility that he may have been able to observe the child's profile, or that she might have looked directly at him from time to time. *Id.* at 632 ("All arguments about whether the angles permitted a sufficient view of the testifying child's eye and lips miss the point").

The Commonwealth maintains that even though the child was not required to face the defendant as she testified, the essential objective behind the confrontation guarantee was satisfied in

[9]The Commonwealth's motion requested that the child "be allowed to sit facing the jury, in front of the jury box [so that she would] not be required to look at the defendant," and that the defendant be required to remain standing behind counsel table during his cross-examination.

this case, due to the fact that the defendant, in his pro se capacity, was able to question the child personally and the jury were, therefore, afforded the opportunity to observe the interaction between the victim and her alleged rapist. The Commonwealth misapprehends the scope of the Massachusetts confrontation guarantee.

The "face-to-face" component of the right to confrontation is an indispensable element of art. 12. *Commonwealth* v. *Johnson, supra* at 503. See *Commonwealth* v. *Amirault,* 424 Mass. at 632. The opportunity to "cross-examine witnesses under oath and the ability of the jury to observe the witness's demeanor are [merely] incidental" to that right. *Commonwealth* v. *Johnson,* 417 Mass. at 503-504. The face-to-face requirement, therefore, cannot be satisfied in a particular case by the presence of other, incidental features. *Ibid.*

We note that although the requirements imposed under art. 12 are stringent, an accused's "right to confront witnesses is not absolute." *Commonwealth* v. *Bergstrom,* 402 Mass. 534, 546 (1988). *Commonwealth* v. *Johnson,* 417 Mass. at 503. It may "yield to unique interests" in certain, limited circumstances. *Commonwealth* v. *Bergstrom, supra* at 545, and cases cited. Appellate courts have consistently recognized the special sensitivities of young children testifying in criminal trials as among those interests warranting special protection. See, e.g., *Commonwealth* v. *Bergstrom,* 402 Mass. at 550-551; *Commonwealth* v. *Tufts,* 405 Mass. 610, 614-615 (1989). Accordingly, a trial judge may implement special arrangements designed to "decrease the stress and trauma that a child witness may suffer" at trial so long as they are "consistent with the constitutional rights of the accused." *Commonwealth* v. *Johnson,* 417 Mass. at 504, and cases cited. See *Commonwealth* v. *Amirault,* 424 Mass. at 635 (special arrangements may be devised so long as the "accused may still meet the child witness face to face").

Even where special seating arrangements are warranted in a particular case, however, they are permissible "only on a showing by the Commonwealth, by more than a preponderance of the evidence, of a compelling need for the [implementation] of such procedure." *Commonwealth* v. *Johnson,* 417 Mass. at 504, citing *Commonwealth* v. *Dockham,* 405 Mass. 618, 623-624 (1989). No such showing was made here. Instead, the judge simply allowed the Commonwealth's motion for special seating without hearing evidence or making specific findings regarding

the necessity of such accommodations, apparently relying exclusively on a written statement in the Commonwealth's motion, arguing that "to allow the child to be intimidated or frightened by the man she has accused as her rapist, would be impermissible." Such an unsupported conclusion is not sufficient to support the implementation of special seating arrangements under any circumstances. Cf. *Commonwealth* v. *Johnson*, 417 Mass. at 505 (age alone insufficient to establish a compelling need for special procedures); *Commonwealth* v. *Amirault*, 424 Mass. at 635 (pediatrician's testimony regarding appropriate manner for children to testify deemed "too general to satisfy [the] demanding constitutional standard").[10]

The Commonwealth argues that any violation of the defendant's rights in this case did not contribute to the verdicts obtained, and was therefore harmless. See *Commonwealth* v. *Johnson*, 417 Mass. at 505 n.6 (violation of a defendant's right to confront the witnesses against him is subject to harmless error analysis). In support of this contention, the Commonwealth points to evidence produced at trial which tends to corroborate the child's testimony, including the defendant's own admissions and his sudden, unexplained departure from the home he shared with the child and her family. The Commonwealth's case against the defendant was strong. The evidence against the defendant, however, was not "overwhelmingly one-sided." *Commonwealth* v. *Amirault*, 424 Mass. at 651. Indeed, the jury in the defendant's first trial were unable to reach a unanimous decision when presented with similar evidence.

In these circumstances, we cannot say that the violation of the defendant's confrontation rights was harmless beyond a reasonable doubt. See *Commonwealth* v. *Johnson, supra*. The convictions must therefore be reversed and the defendant must have a new trial.[11]

*Expert Testimony*

We next address the defendant's final claim of error. He argues that the testimony of Verba Fanolis, a social worker who

---

[10]We express no opinion whether a compelling need for the use of alternative seating procedures existed in this case.

[11]Reversal is required notwithstanding the fact that "ordering a new trial may come with a heavy cost to the complainant[] and [her] family, particularly where, as here," the crimes for which the defendant was convicted occurred more than six years ago. *Commonwealth* v. *Federico*, 425 Mass. 844, 852 n.14 (1997).

was also the child complainant's treating therapist, impermissibly intruded on the jury's role of assessing her credibility and was, therefore, erroneously admitted. For the reasons which follow, this error alone is sufficient to require reversal of the defendant's convictions. Cf. *Commonwealth* v. *Federico*, 425 Mass. 844, 851 (1997) (reversible error to admit expert testimony that could have been understood by the jury as bolstering the complainants' credibility).

After establishing Fanolis's expertise in the area of childhood sexual abuse and her familiarity with the child complainant in the case, the prosecutor asked her whether the child "display[ed] some of th[e] symptoms of a child who has been sexually abused." The defendant objected. The following exchange then occurred:

> THE JUDGE: "Could I hear the question again?"

> THE PROSECUTOR: "Did [the child] display some of the symptoms of a child who has been sexually abused? I can rephrase it slightly, your Honor."

> THE JUDGE: "I would want to know whether she indicated symptomatology that was consistent with your knowledge of the effects of child abuse."

> FANOLIS: "Yes."

> THE PROSECUTOR: "So, the symptoms that [the child] presented to you were consistent with those of a child who's been sexually abused?"

> FANOLIS: "That's correct."

The defendant maintains that Fanolis's testimony amounted to an improper endorsement of the truth of the child's credibility and was, therefore, impermissible. See *Commonwealth* v. *Montanino*, 409 Mass. 500, 504 (1991) ("Evaluations of credibility are, of course, within the exclusive province of the trier of fact"). We agree. Expert testimony regarding the general behavioral characteristics of sexually abused children is admissible to "assist the jurors in assessing a victim witness's testimony and credibility." *Commonwealth* v. *Federico*, 425 Mass. at 848. The testimony "must, however, be confined to a

description of the general or typical characteristics shared by child victims of sexual abuse." *Ibid.* Experts are prohibited from comparing those general characteristics to the behavioral characteristics of a specific child complainant. *Commonwealth* v. *Trowbridge,* 419 Mass. 750, 759 (1995). Although this type of expert testimony "falls short of directly rendering an opinion on the credibility of the . . . witness,'[i]t would be unrealistic to allow [the] testimony and then expect jurors to ignore it when evaluating the credibility of the complaining child.' " *Commonwealth* v. *Federico, supra* at 849 n.9, quoting from *Commonwealth* v. *Ianello,* 401 Mass. 197, 202 (1987). *Commonwealth* v. *Trowbridge,* 419 Mass. at 760. Compare *Commonwealth* v. *Federico,* 40 Mass. App. Ct. 616, 618 (1996) (testimony of the Commonwealth's expert witness in response to hypothetical questions closely mirroring the facts of the case amounted to an impermissible endorsement of the child's credibility), *S.C.,* 425 Mass. at 845.

There can be no doubt that Fanolis made a direct comparison between the general behavioral characteristics of child victims of sexual abuse and the behavior of the child complainant in this case. Moreover, where, as here, the expert witness also examined or treated the child, "[t]he risk of improper comparisons between any general behavioral characteristics of sexually abused children and [the characteristics of] a particular complaining child witness is most acute." *Commonwealth* v. *Federico,* 425 Mass. at 849. We hold, therefore, that the testimony elicited from Verba Fanolis "impermissibly intrude[d] on the jury's province to assess the credibility of the witness," and should have been excluded. *Commonwealth* v. *Trowbridge, supra* at 759. In any retrial, all comparisons between the general characteristics of sexually abused children and the characteristics of the child complainant must be avoided.

The judgments are reversed and the verdicts set aside.

*So ordered.*