COMMONWEALTH *vs.* JOHN DAVIS.

No. 11-P-1746.

Suffolk. October 9, 2012. - April 11, 2013.

Present: BERRY, KAFKER, & GREEN, JJ.

*Controlled Substances. "School Zone" Statute. Constitutional Law,* Confrontation of witnesses, Harmless error, Double jeopardy, Indictment. *Error, Harmless. Evidence,* Certificate of drug analysis, Wiretap. *Electronic Surveillance. Search and Seizure,* Electronic surveillance, Warrant, Affidavit. *Practice, Criminal,* Confrontation of witnesses, Harmless error, Warrant, Affidavit, Double jeopardy, Indictment, Trial of indictments together.

At the trial of indictments charging the defendant with trafficking in 200 grams or more of cocaine and with doing so in a school zone, the erroneous admission in evidence of certificates of drug analysis, in violation of the defendant's constitutional right to confront witnesses against him, was not harmless beyond a reasonable doubt, where other, properly admitted pieces of evidence, weighed either individually or in combination, were not so overwhelming as to nullify any effect that the improperly admitted certificates might have had on the jury. [487-489]

A Superior Court judge properly denied the criminal defendant's pretrial motion to suppress recordings of certain telephone conversations between a confidential informant and a codefendant, where the affidavit accompanying the application for the warrant permitting the recording of the conversations set forth facts sufficient to demonstrate a connection to organized crime [489-491]; and where the warrant was not lacking in particularity or overbroad [491-492].

A Superior Court judge properly denied the criminal defendant's pretrial motion for a hearing to challenge the veracity of statements made in the application for a warrant permitting the recording of certain telephone conversations, where, at a threshold hearing, the defendant did not establish that the affiant made a false statement knowingly and intentionally or with reckless disregard for the truth. [492-493]

There was no merit to the criminal defendant's claim that principles of double jeopardy barred his retrial, where the defendant waived that claim by not raising it properly. [493]

The improper joinder at the criminal defendant's first trial of an indictment charging conspiracy with indictments for substantive offenses did not bar his retrial on the substantive offenses alone, where the defendant did not establish that any evidence related to the conspiracy charge was introduced at the retrial and where the defendant suffered no prejudice from the misjoinder. [493-495]

INDICTMENTS found and returned in the Superior Court Department on February 27, 2006.

Pretrial motions to suppress evidence were heard by *Janet L. Sanders*, J.; a pretrial motion for a hearing on alleged misrepresentations in a search warrant was heard by *Christine M. McEvoy*, J.; the cases were tried before *Linda E. Giles*, J.; and a motion for a new trial, filed on November 8, 2010, was heard by her.

*James E. Methe* for the defendant.

*Zachary Hillman*, Assistant District Attorney (*Dean A. Mazzone*, Assistant Attorney General, with him) for the Commonwealth.

BERRY, J. A Superior Court jury convicted the defendant of trafficking in 200 grams or more of cocaine, G. L. c. 94C, § 32E(*b*)(4), and doing so in a school zone, G. L. c. 94C, § 32J. On the defendant's consolidated appeal from his convictions and from the denial of his motion for a new trial, the Commonwealth concedes that the admission of certificates of drug analysis (drug certificates) violated the defendant's constitutional confrontation rights under *Melendez-Diaz* v. *Massachusetts*, 557 U.S. 305, 310-311 (2009) (*Melendez-Diaz*). We reject the Commonwealth's argument that the *Melendez-Diaz* error was harmless beyond a reasonable doubt. Accordingly, we reverse the defendant's convictions.

Notwithstanding the reversal, we address certain issues that remain live and will affect any further proceedings. Specifically, we address three points involving the denial of the defendant's motion to suppress recorded oral communications between a confidential informant (CI), the defendant, and a codefendant, Victor Alvarado. First, the defendant argues that the averments in State Trooper Steven M. Racki's affidavit in support of a warrant for the one-party consensual recording of conversations under *Commonwealth* v. *Blood*, 400 Mass. 61 (1987) (*Blood* warrant), failed to demonstrate the required nexus with organized crime. Second, the defendant contends that the *Blood* warrant was overbroad in scope. Third, the defendant argues that because the affidavit in support of the *Blood* warrant contained certain factual discrepancies (principally relating to telephone record information), the motion judge improperly declined to hold a

hearing under *Franks* v. *Delaware*, 438 U.S. 154 (1978) (*Franks* hearing), to test the veracity of statements in the trooper's affidavit. We affirm the denial of the motion to suppress and the denial of the motion for a *Franks* hearing.

In addition, we address the defendant's contention that double jeopardy barred the trial below and, hence, the convictions from which he now appeals. For reasons that follow, we conclude that there is no such double jeopardy obstacle.

1. *Background.* We briefly summarize the relevant background concerning the motion to suppress and shall supplement this background as needed in our analysis of particular issues. The defendant was arrested in connection with an undercover investigation by the State police in which cocaine was bought by the CI. After a series of sample controlled "buys" under police direction, Alvarado indicated to the CI that he could procure a kilogram of cocaine on short notice, and the CI advised Alvarado that he would be in touch about a purchase. Based on the large quantity of the planned purchase, Trooper Racki filed an affidavit in support of, and procured, a *Blood* warrant authorizing the tape recording of oral communications between the consulting CI and other persons — including, but not limited to, Alvarado — involved in the deal for the kilogram purchase.[1]

On the day set for the controlled buy of the kilogram of cocaine, Trooper Racki, a surveillance team, and the CI arrived at the housing development where the transaction was to take place. The CI, under the *Blood* warrant, was equipped with a body wire to record his conversations. A car arrived at the site. The defendant was driving, and the two passengers were Alvarado and one Reggie Bragg.[2] The CI entered the car. The defendant and Alvarado produced the cocaine. The CI placed a small amount on his tongue to test the quality. The CI indicated to the individuals in the car that the cocaine was of acceptable quality.

---

[1]Specifically, the warrant authorized "electronic eavesdropping and tape recording of oral and video communications occurring face-to-face and/or by telephonic communications between Tpr Racki, [CI], Victor Alvarado, Kelli Fitzpatrick and/or as yet any of the unknown co-conspirators, who join in these conversations, which conversations constitute evidence of a violation of Chapter 94C of the General Laws."

[2]Bragg later signed an agreement with the district attorney's office to testify for the Commonwealth in exchange for dismissal of his charges.

The body wire recorded the entire conversation that took place in the car among the CI, the defendant, Alvarado, and Bragg. The CI then exited the car under the guise of obtaining $24,000 in cash to pay for the cocaine. At that point, the CI met with Trooper Racki and confirmed to the trooper that the cocaine was in the car, commenting, "That shit's good." The body wire recorded this conversation between the CI and Trooper Racki.

Surveillance officers then converged upon the car and arrested the defendant, Alvarado, and Bragg. Seized from the car were two bricks of a white, powdery substance that laboratory analysis confirmed was cocaine. Each brick of cocaine was covered in cellophane and wrapped with duct tape and wax — a manner of packaging that, Trooper Racki testified at trial, is characteristic of the bulk sale of cocaine at the kilogram level of weight. Also seized from the rear cargo area of the car was $29,000 in cash. Seized from the defendant's person was a ledger that contained names, notations, monetary figures, and references to cocaine in street vernacular.

2. *Harmless error beyond a reasonable doubt analysis.* In determining whether the constitutional error in the admission of the drug certificates was harmless beyond a reasonable doubt, the standard of review is whether, "on the totality of the record before us, weighing the properly admitted and the improperly admitted evidence together, we are satisfied beyond a reasonable doubt that the tainted evidence did not have an effect on the [jury] and did not contribute to the [jury's verdicts]." *Commonwealth* v. *Vasquez,* 456 Mass. 350, 360 (2010), quoting from *Commonwealth* v. *Tyree,* 455 Mass. 676, 701 (2010). The Commonwealth must establish that other properly admitted evidence of guilt was so "overwhelming" as to "nullify any effect" that the improperly admitted drug certificates might have had on the jury. *Commonwealth* v. *Vasquez, supra* at 362, quoting from *Commonwealth* v. *Tyree, supra* at 704 n.44.

The Commonwealth cites several pieces of evidence that, it submits, rendered the admission of the drug certificates harmless beyond a reasonable doubt. These include: (1) that the CI, an experienced cocaine user, conducted a taste test of the cocaine and confirmed, "That shit's good"; (2) Trooper Holland's testimony at trial that the substance seized had the appearance

and texture of cocaine; (3) Trooper Racki's testimony that the substance — formed as a brick and sheathed in cellophane, duct tape, and wax — was packaged in a manner consistent with the distribution of individual kilograms of cocaine; (4) that the $29,000 in cash found in the car was suggestive of the proceeds from cocaine distribution; and (5) the defendant's ledger, which, according to the testimony of the Commonwealth's expert, Sergeant Feeney, resembled the type of record frequently used by dealers to keep track of transactions.

We conclude that these pieces of evidence, weighed either individually or in combination, were not so powerful as to "nullify any effect" of the admission of the drug certificates. See *Commonwealth* v. *Vasquez, supra* at 362, quoting from *Commonwealth* v. *Tyree, supra* at 704 n.44.

Of the foregoing evidence, the Commonwealth relies most heavily on the CI's taste test, which identified the substance as high quality cocaine. However, this subjective taste test lacks any scientific reliability. Indeed, even a positive field test — which, in contrast, has scientific underpinnings, and which may be conducted by a police officer experienced in drug investigations — does not mean, per se, that the error in admitting a drug certificate is harmless beyond a reasonable doubt. See *Commonwealth* v. *Fernandez*, 458 Mass. 137, 151 n.20 (2010) ("no appellate case from Massachusetts has accepted as reliable field test results, regardless of the purpose for which they are offered"); *Commonwealth* v. *King*, 461 Mass. 354, 358-359 (2012) (police field test not dispositive in absence of testimony on officer's expertise and type of field test kit used); *Commonwealth* v. *Billings*, 461 Mass. 362, 364-365 (2012) (police field test not sufficient without testimony on officer's expertise and testimony on actual test results). Compare *Commonwealth* v. *Connolly*, 454 Mass. 808, 831 (2009) (field tests one factor in nullifying effect of drug certificates in circumstances where testing officers had seventeen and thirteen years, respectively, of narcotics investigation experience and both were subject to cross-examination); *Commonwealth* v. *Casali*, 459 Mass. 139, 147 (2011) (police field test rendered drug certificates harmless beyond reasonable doubt only in combination with defendant's own testimony that seized substances were heroin and marijuana,

defense counsel's concession on that point, and evidence that defendant was admitted to hospital for symptoms of heroin withdrawal one day after crime). Given that a field test may not meet the constitutional harmless error standard, a fortiori, a lay taste test — even when conducted by an experienced cocaine user — does not meet the grade of proof required to render the error in admitting the drug certificates harmless beyond a reasonable doubt.

The remaining pieces of evidence to which the Commonwealth cites, *supra*, fare no better in proving harmless error. Trooper Holland's trial testimony regarding the appearance of the substance, while relevant in light of his experience in the field, is not the type of potent evidence required to render constitutional error harmless beyond a reasonable doubt. See *Commonwealth v. Dawson*, 399 Mass. 465, 467 (1987) ("it would be a rare case in which a witness's statement that a particular substance looked like a controlled substance would alone be sufficient to support a conviction"). See also *Commonwealth* v. *Vasquez*, 456 Mass. at 365 ("Mistaken identification of cocaine by trained and experienced law enforcement personnel is not unknown in the annals of our law"). Similarly, notwithstanding that Trooper Racki's testimony on the method of packaging may have provided a circumstantial link, "[i]t is unlikely that the form of packaging is necessarily proof that a substance is a particular drug." *Commonwealth* v. *Perez*, 76 Mass. App. Ct. 439, 444 n.4 (2010). Finally, that a large amount of cash was found in the car, and that the defendant possessed a ledger, may be probative of drug sales, but does not prove chemical composition. See *Commonwealth* v. *Vasquez, supra* at 366-367 (scale, rubber bands, cash, sandwich bags, and "walkie-talkie" all relevant on issue of distribution but not on issue of chemical composition).

3. *Motion to suppress recordings of conversations.* As previously noted, a Superior Court judge denied the defendant's motion to suppress recordings of certain cellular telephone conversations between the CI and Alvarado, as well as the face-to-face conversations between the CI and the defendant that were recorded by the CI's body wire. We address these points of challenge.

a. *Challenge to the organized crime predicate in the* Blood

*warrant affidavit.* General Laws c. 272, § 99, the so-called wiretap statute, sets forth a complex statutory framework governing the interception of communications by law enforcement officials and provides comprehensive procedures for judicial oversight and the procurement of warrants. See generally *Commonwealth* v. *Vitello,* 367 Mass. 224 (1975). Excepted from the full panoply of § 99 procedural requirements are communications recorded by law enforcement officers with the consent of one participating party while investigating designated offenses *"in connection with organized crime."* G. L. c. 272, § 99 B 4, 7.[3] See *Commonwealth* v. *Thorpe,* 384 Mass. 271, 275-281 (1981), cert. denied, 454 U.S. 1147 (1982). See also *Commonwealth* v. *Penta,* 423 Mass. 546, 550-553 (1996) (full § 99 warrant not required where one-party consent exception applies).

However, even if a full-scale interception warrant under G. L. c. 272, § 99, is not required, and even if the one-party consent exception applies, a warrant may still be required to comply with art. 14 of the Massachusetts Declaration of Rights. See *Commonwealth* v. *Blood,* 400 Mass. at 70-75. As noted, Trooper Racki submitted an affidavit in support of a *Blood* warrant to record one-party consensual conversations. The defendant contends that Trooper Racki's *Blood* warrant affidavit did not demonstrate a sufficient nexus to organized crime and, therefore, fell outside the one-party consent exception.

We conclude that the motion judge was correct in finding the requisite connection with organized crime. The judge aptly analogized this case to *Commonwealth* v. *Zuluaga,* 43 Mass. App. Ct. 629 (1997) (*Zuluaga*), in which this court addressed what constitutes a "connection with organized crime" for purposes of triggering the one-party consent exception. *Id.* at 633.

---

[3]General Laws c. 272, § 99 B 4, as amended through St. 1968, c. 738, § 1, provides in pertinent part:

> "[I]t shall not constitute an interception for an investigative or law enforcement officer, as defined in this section, to record or transmit a wire or oral communication if the officer is a party to such communication or has been given prior authorization to record or transmit the communication by such a party and if recorded or transmitted in the course of an investigation of a designated offense as defined herein."

Section 99 B 7 defines "designated offense" to include, inter alia, "sale of a narcotic" "in connection with organized crime."

*Zuluaga* similarly involved the street sale of a kilogram of cocaine, prior to which police had obtained a *Blood* warrant to record conversations between the informant-purchaser and the defendant-seller. *Id.* at 631. In the challenged affidavit in *Zuluaga*, the affiant State trooper stated, "[I]t is my experience that persons involved in the distribution of kilogram and multi-kilogram quantities of cocaine necessarily conduct their activities in concert with others." *Id.* at 634. This affirmation, the *Zuluaga* court reasoned, in the factual context of the case, was sufficient to demonstrate a connection to organized crime. See *ibid.* And so it is in this case, where the language in Trooper Racki's affidavit, as well as the underlying circumstances, were nearly identical to those in *Zuluaga*.[4]

b. *Scope of the* Blood *warrant.* The defendant also contends that the *Blood* warrant lacked particularity because it was not limited to a specific range of dates and times. We disagree. The warrant, issued on December 8, 2005, clearly states: "The authority granted by this order and warrant shall terminate fifteen (15) days after the issuance of said warrant." Given that the date of issuance is printed conspicuously on the warrant, its time limitations are unambiguous and precise.

Further, the defendant contends that the warrant was overbroad because it permitted the recording of "unknown co-conspirators." This contention is likewise unavailing. At the outset of Trooper Racki's investigation, the parties to the cocaine distribution ring were still unascertained. Under those circumstances, it was not unreasonable for the warrant to permit the recording of unknown coconspirators. "Common sense dictates that warrants for the

---

[4]Trooper Racki states in his affidavit:

"It is also my opinion, based on my training and experience, and the collective experience of the officers involved in this case, that a high degree of discipline and organization is required for individuals such as Victor [Alvarado], and as yet any unknown individuals, to obtain and distribute, on a regular basis, quantities of Cocaine, a Class B controlled substance, and to collect the requisite funds for the purchase and further distribution, and to do this surreptitiously so as not to attract the attention of Law Enforcement. . . . I also believe that my decision to seek authority to intercept oral communication[s] is based upon the likelihood that those interceptions would disclose or lead to evidence of the offenses set forth in the above paragraphs in connection with this organized criminal activity."

seizure of oral communications not be limited in such a way as to preclude all flexibility and to endanger the safety of the informant or officer on whose body the transmitter is secreted." *Commonwealth* v. *Penta*, 423 Mass. at 554.

4. Franks *hearing.* We are not persuaded by the defendant's assertions that the recordings were subject to suppression because he was improperly denied a *Franks* hearing. See *Franks* v. *Delaware*, 438 U.S. 154 (1978). In seeking a *Franks* hearing, Alvarado (with whom the defendant joined) focused on inconsistencies between Trooper Racki's *Blood* warrant affidavit and certain telephone records, specifically with regard to the number and timing of telephone calls made between the CI and Alvarado.

There is a two-step process by which a defendant can challenge the veracity of statements in a search warrant affidavit. See *Franks* v. *Delaware*, 438 U.S. at 155-156; *Commonwealth* v. *Amral*, 407 Mass. 511, 522-525 (1990). The first step involves the holding of a threshold *Amral* hearing, the purpose of which is to determine whether the defendant is constitutionally entitled to the second step, a *Franks* hearing. See *Commonwealth* v. *Amral*, *supra* at 522-523, 525. In this case, a second Superior Court judge afforded the defendant the benefit of an *Amral* hearing. However, based on the *Amral* hearing, the judge determined the defendant was not entitled to a *Franks* hearing because he did not establish the requisite "substantial preliminary showing that the affiant [Trooper Racki] made a false statement knowingly and intentionally or with reckless disregard for the truth." *Commonwealth* v. *Douzanis*, 384 Mass. 434, 437 (1981).

In reaching this conclusion, the motion judge questioned Trooper Racki with regard to each potential discrepancy in the telephone records. Trooper Racki offered his explanations and reaffirmed that the affidavit was true to the best of his knowledge. The motion judge ultimately credited Trooper Racki's testimony and attributed the discrepancies to nonmaterial, bona fide mistakes. The motion judge further found that the contested misstatements were reconcilable with the telephone records and so concluded that "there was nothing that I found that caused me any concern to cast a doubt as to the veracity of the representations made by the affiant." In sum, we see no abuse of discre-

tion in the motion judge's determination that the discrepancies did not rise to the level of requiring a *Franks* hearing.

5. *Errors in first trial.* The convictions now on appeal resulted from the defendant's second trial (Trial II). His first trial (Trial I) resulted in a mistrial. He argues that Trial II was barred on double jeopardy and due process grounds, due to errors in Trial I.

a. *Sufficiency of evidence at first trial and double jeopardy.* The defendant argues that in Trial I, the trial judge should have allowed his motion for a required finding after the Commonwealth rested and, thus, double jeopardy principles barred his retrial.

The defendant's claim is waived. The proper way to have raised a double jeopardy claim would have been by a motion to dismiss the indictments prior to Trial II; then, if that motion were denied, to have filed a petition for relief with a single justice of the Supreme Judicial Court pursuant to G. L. c. 211, § 3. See *Commonwealth* v. *Steward,* 396 Mass. 76, 77 n.2 (1985); *Commonwealth* v. *Chatfield-Taylor,* 399 Mass. 1, 3 (1987); *Commonwealth* v. *Ginnetti,* 400 Mass. 181, 182 (1987). "Even though the right to be protected from double jeopardy is fundamental to our legal system, 'that status alone has not put beyond the pale the idea that it may be waived by failure to raise it at a lower level.' " *Commonwealth* v. *Medina,* 64 Mass. App. Ct. 708, 713 n.8 (2005), quoting from *Commonwealth* v. *Norman,* 27 Mass. App. Ct. 82, 87, *S.C.,* 406 Mass. 1001 (1989). "[B]y failing to assert the defense of double jeopardy prior to his second trial, the defendant waived the right to do so here." *Commonwealth* v. *Spear,* 43 Mass. App. Ct. 583, 587 (1997).

b. *Misjoinder of indictments for trial.* Trial I encompassed three indictments: (1) trafficking in cocaine, (2) such trafficking in a school zone, and (3) conspiracy. Trial II addressed only the two substantive offenses.[5] The defendant argues that due process and principles of fairness barred his retrial because Trial I violated Mass.R.Crim.P. 9(e), 378 Mass. 859 (1979), which provides that indictments for substantive offenses (here, trafficking) should not be tried jointly with indictments for

---

[5]The conspiracy indictment was nol prossed after the defendant was sentenced following his convictions in Trial II.

conspiracy to commit those same offenses, absent the defendant's motion for such joinder. See *Commonwealth* v. *Benson*, 389 Mass. 473, 475 n.3, cert. denied, 464 U.S. 915 (1983).

Because there was such improper joinder under rule 9(e) in Trial I — which improperly combined the substantive and conspiracy indictments — the defendant contends that "a broader scope of evidence" may have been permitted in Trial I than would otherwise have been admissible. The defendant cites the Reporters' commentary to rule 9(e), which notes the "much broader scope of admissibility of evidence permitted to prove [a] conspiracy charge." Reporters' Notes to Mass.R.Crim.P. 9(e), Mass. Ann. Laws, Rules of Criminal Procedure, at 1407 (LexisNexis 2012-2013).

The defendant suggests that without the "broader" evidence that may have been admitted in Trial I in connection with the conspiracy indictment, he might well have been acquitted on the substantive charges, in which case he could only have been tried subsequently on the conspiracy charge, rather than on the substantive charges underlying his present convictions following Trial II. There are two fundamental flaws with respect to these contentions, and the defendant's challenge to Trial II. First, as to Trial II, which is the subject of this appeal, the defendant's brief has not cited even one piece of allegedly "broader" conspiracy evidence that may have been introduced in Trial I, and that was introduced again (and should have been excluded under the defendant's theory) in Trial II (without a joined conspiracy).

Second, even assuming that the improperly joined conspiracy and trafficking indictments in Trial I hypothetically led to "broader" evidence in Trial I (with the potential for spillover from the conspiracy to the substantive offenses), the defendant has suffered no resulting prejudice. Even if he had been convicted in Trial I, the defendant's remedy on appeal would have been a reversal of the Trial I convictions because of the improper joinder and a remand for retrial and further proceedings. In such further proceedings, the defendant could have been retried in one proceeding on both substantive offenses of trafficking and trafficking in a school zone. That is precisely what occurred in Trial II, which is the subject of this appeal. There, only the traf-

ficking and trafficking in a school zone indictments were joined for trial, with the conspiracy indictment separated out. Thus, even under the challenge advanced, the defendant is precisely where he would have been in terms of trial processes.

In sum, the defendant's claims concerning double jeopardy and due process violations arising out of Trial I are unavailing.

6. *Conclusion.* Due to the constitutional error in the admission of the drug certificates, the judgments must be reversed. For the reasons stated in parts 3 and 4, there was no error in the denial of the defendant's motion to suppress or in the denial of the motion for a *Franks* hearing. Finally, we conclude that Trial II was not barred by double jeopardy or principles of due process.[6]

> *Order denying motion to suppress affirmed.*
>
> *Order denying motion for Franks hearing affirmed.*
>
> *Judgments reversed.*
>
> *Verdicts set aside.*
>
> *Order denying motion for new trial reversed.*

---

[6]The defendant has raised a series of other alleged errors in the conduct of the trial in addition to those points discussed above. These other alleged errors include, but are not limited to, the following: there was error in admitting statements of a codefendant recorded on the one-party consensually monitored tapes; there was error in the jury instructions concerning joint venture as connected to the trafficking charge; the jury verdict slip did not specify whether the jury found the defendant guilty on a joint venture or principal theory of proof; the prosecutor's closing improperly criticized the defense as "desperate"; and the defendant received ineffective assistance of counsel in respect to eight variously described trial acts or omissions in representation. We are not persuaded that there were such errors as the defendant argues. In any event, we need not address these additionally alleged errors and omissions, which are unlikely to occur in any retrial. See *Commonwealth* v. *Nutbrown,* 81 Mass. App. Ct. 773, 774 n.2 (2012).